Jean **LEWTER**, Plaintiff/Appellant,

v.

O'CONNOR MANAGEMENT INCORPORATED and O'Connor Management Incorporated, d/b/a Rivergate Mall, Defendants/Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 29, 1994.

Application for Permission to Appeal Denied by Supreme Court Oct. 3, 1994.

Joseph M. Dalton, Jr., Catherine S. Hughes, Eason, Lawson & Dalton, Nashville, for plaintiff/appellant.

Michael K. Bassham, Robert E. Parker, Parker, Lawrence, Cantrell & Dean, Nashville, for defendant/appellee O'Connor Management, Inc. d/b/a Rivergate Mall.

## OPINION

TODD, Presiding Judge.

This is an action against a shopping center for a criminal assault upon an employee of a tenant in the parking lot of the shopping center. The Trial Judge granted summary judgment of dismissal, and plaintiff appealed, presenting for review the following issue:

I. Whether the Trial Court erred in granting summary judgment in favor of the defendant when there were genuine issues of material fact regarding its liability for the criminal assault upon the plaintiff. Specifically, the issues of material fact which were raised in the Trial Court include the following:

a) Whether the defendant breached its duty to the plaintiff to provide security and adequate lighting in the area where the plaintiff was physically assaulted and injured on April 30, 1991 at approximately 9:45 p.m.

b) Whether the assault involving the plaintiff was foreseeable by the defendant in view of at least eighteen prior reported incidents of crime on the subject premises in fifteen months prior to the assault on plaintiff.

c) Whether the assault involving the plaintiff was foreseeable when the defendant had actual knowledge of the plaintiff's presence at the specific time and place where the assault occurred based upon the "special relationship" of the parties.

d) Whether the defendant's breach of duty owed to the plaintiff proximately resulted in the injuries she sustained from a physical assault by an unknown third person.

Defendants present the following issues:

Whether the defendant owed a duty to the plaintiff to provide additional security in the parking lot of the mall where the plaintiff's employer was located.

a) Whether there existed a special relationship between the plaintiff and defendant.

b) Whether the defendant knew, or should have known, that acts were occurring or were about to occur which posed an imminent probability of harm to the plaintiff.

The motion for summary judgment reads as follows:

Defendants, O'Connor Management, Inc. and O'Connor Management, Inc. d/b/a Rivergate Mall (these two defendants are one and the same and will hereinafter be referred to as "Rivergate Mall"), pursuant to Rule 56 of the Tennessee Rules of Civil Procedure, move for summary judgment in their favor on all issues in this case, and in support thereof state that there is no genuine issue as to any material fact because the plaintiff is unable to establish the essential elements of her case. Therefore, these defendants are entitled to judgment as a matter of law.

Specifically, in order to prove negligence under Tennessee law, the plaintiff must show that Rivergate Mall knew or had reason to know that acts were occurring or were about to occur on the premises that posed an imminent probability of harm to an invitee. *Cornpropst v. Sloan,* 528 S.W.2d 188 (Tenn.1975). The plaintiff has no proof, however, that the defendant knew or had reason to know that acts were occurring or were about to occur on the premises that posed an imminent probability of harm to her. Because there is no proof of such knowledge, the defendant is entitled to be dismissed.

This motion is based on the pleadings, the deposition of the plaintiff, Norma Jean Lewter, filed contemporaneously herewith, and portions of which are attached hereto as Exhibit A, the affidavits of Terry Hutcherson and Mickey Miller, attached hereto as Exhibit B and C, respectively, and on the Memorandum in support of this motion, filed contemporaneously herewith.

A party seeking summary judgment has the burden of showing the court that there are not disputed material facts creating a genuine issue for trial, and that the moving party is entitled to judgment as a matter of law; a conclusory assertion that the non-moving party has no evidence is clearly insufficient. T.R.C.P. Rule 56.03, *Byrd v. Hall,* Tenn.1993, 847 S.W.2d 208, 215.

In the context of the present case, the motion should have averred that its supporting evidence showed without contradiction that defendant had no duty to provide protection of plaintiff from assault. The motion did not so state, and was subject to being stricken for insufficiency. However, the parties have apparently treated the motion as including by inference the proper allegation, and the Trial Court did likewise. This Court will follow the same course.

In *Cornpropst v. Sloan,* Tenn.1975, 528 S.W.2d 188, the question on appeal was whether a complaint stated a cause of action against merchants who are members of a shopping center association, for personal injuries to an invitee who was assaulted by a third party in the parking lot of the center. The complaint alleged:

5. On October 18, 1973, at or around 8:00 p.m. to 8:30 p.m., plaintiff, Marie Cornpropst, came to the Eastgate Shopping Center for the purpose of shopping. Plaintiff was therefore an invitee. It was dark. Plaintiff parked her vehicle in front of defendant Woolco store and went in there to shop. Having made her purchases, and after leaving said store, as the plaintiff was preparing to re-enter her vehicle in order to depart from said shopping center, the defendant, Marcus Sloan, Jr., suddenly drove up by the side of her car, jumped out, violently grabbed the plaintiff, with whom he wrestled and fought and tried to force her from her vehicle into his vehicle. The defendant Sloan viciously attacked the plaintiff and beat her about the person as she resisted with all her might and screamed for help.

. . . .

6. Prior to this attack upon the plaintiff there had been committed various crimes, assaults, and other acts of violence, either on the premises or in the immediate areas of the Eastgate Shopping Center, which rendered said vicinity unsafe and potentially dangerous, particularly for the individual female shopper at nighttime. Throughout the times and afterwards of these criminal occurrences which preceded the incident complained of herein, there were no security guards posted, no precautions taken and no other protective measures used or installed in the Eastgate Shopping Center premises for the safety of customers; ...

The Supreme Court affirmed dismissal and said:

We are not called upon, in this case, to draft a rule applicable to all of the many types of business and entertainment and service establishments or of every premises liability, or special relationship situation wherein a duty of protection of invitees might be asserted, and we do not propose to do so.

In our opinion the appropriate rule applicable to this case is as follows: There is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against such act arises.

The resolution of the present issue on appeal depends upon the interpretation of the quoted verbiage in *Cornpropst:*

[A]cts *are* occurring or are about to occur on the premises that *pose imminent probability of harm. . . .*

In *Cornpropst,* there was an allegation of previous acts of violence. The Supreme Court did not recognize such previous acts as sufficient notice that "acts are occurring or are about to occur . . . that pose imminent probability of harm. . . ."

■ This Court interprets the rule in *Cornpropst* to be that, ordinarily, to establish premises liability for assault upon an invitee, there must be proof of acts or events contemporaneous with or so closely connected in time with the injury of plaintiff as to "pose an imminent probability of harm" to the invitee.

In his deposition, defendants' manager testified at length regarding the security situation in the 95 acre, 5,500 space parking lot and stated unequivocally and repeatedly that the isolated incidents coming to his attention were insufficient to require additional security measures. He specifically denied knowledge of any incident at or near the time of the attack on plaintiff which would suggest an imminent probability of harm to plaintiff.

The affidavit of Terry Hutcherson, security guard, states:

. . . 3. On the evening in question, my first knowledge of the attack on the plaintiff came over my police radio. Immediately upon learning of the attack, I went directly to the scene. Prior to receiving the call over my police radio, I was not aware of any acts which were occurring or which were about to occur on the premises that posed an imminent probability of harm to Jean Lewter or any other person on the premises.

The affidavit of Mickey Miller, security guard, states:

3. On the evening in question, my first knowledge of the attack on the plaintiff came over my two-way mall radio. Immediately upon learning of the attack, I went directly to the scene. Prior to receiving the call over my radio, I was not aware of any acts which were occurring or which were about to occur on the premises that posed an imminent probability of harm to

Jean Lewter or any other person on the premises.

The affidavit of Richard Pope states:

1. That I am employed with the Goodlettsville Police Department and have been so employed since 1972. My present rank of office with said Department is that of Captain.

2. That I have personally conducted a search of the public records with the Department, specifically an offense report survey for the property at 1000 Two Mile Parkway, which is the site of Rivergate Mall.

3. That the findings of said survey are that at least eighteen reported incidents having occurred in the parking lot of Rivergate Mall during a period from January 1, 1990, until April, 1991, involving purse snatchings and/or assaults.

4. That these incident reports were made by either the Goodlettsville Police force or by the security personnel employed by Rivergate Mall.

The excerpts from the deposition of plaintiff attached to defendants' motion for summary judgment contain no statement of any fact which would "pose imminent probability of harm" to the plaintiff.

The only factual basis for a finding of the occurrence of acts "that pose imminent probability of harm" is the affidavit of Richard Pope that public records show that "at least" eighteen reported incidents involving purse snatchings and/or assaults were reported during a period from January 1, 1990, to April, 1991. There is no other evidence of the date or nature of any incident or incidents which might "pose imminent probability of harm" to the plaintiff.

Nevertheless, plaintiff insists that she occupied a position of "special relationship" recognized in *Cornpropst, supra,* in the following:

The cases involving liability for the criminal acts of third persons are most numerous involving the innkeeper guest relationship and the patron public amusement owners and operators, including lounges, beer parlors, rock and roll concerts, bowl-

ing alleys, etc. In the great majority of cases involving these relationships the offender that perpetrates the criminal act giving rise to the litigation is identified in advance, and liability is predicated on some action or course of conduct of the particular offender that gave notice of the imminent probability of danger.

In the instant case the offender was not, and under the allegations of the bill, could not have been identified in advance of the perpetration of the action (see allegations in paragraph five [5] of the complaint). The complaint relies entirely upon the vague allegation that various crimes, assaults and other acts of violence had been committed either on the premises or in the immediate area.

*Cornpropst,* 528 S.W.2d at 192–93.

In *Zang v. Leonard,* Tenn.App.1982, 643 S.W.2d 657, plaintiff, a guest of a motel, was attacked while unloading his baggage in the parking lot provided by the he motel for its guests. Plaintiff sued the motel for failing to provide a safe parking lot and for failing to assist him after he was injured. A jury returned a verdict for the plaintiff. This Court distinguished the "wide open parking" for the general public in *Cornpropst* from the parking lot for guests only of a motel which advertised better than ordinary facilities, where the lot was convenient to law violators, and other patrons had been assaulted on the premises. This Court held:

> ... These circumstances, and all others shown by the evidence, were the proper basis for a finding of fact by the jury as to what, if any, protective measures would have been employed by a reasonably prudent motel operator under the same circumstances.

643 S.W.2d at 663.

The Trial Court judgment was reversed for trial errors, but the cause was remanded for retrial as to specified defendants.

It is seen that *Zang* was distinguished from *Cornpropst* on grounds of the special relationship of innkeeper and guest.

The opinion in *Cornpropst* recognized other "special relationships," which might give rise to a duty to safeguard, including innkeepers, lounges, beer parlors, rock concerts and bowling alleys. These possible exceptions relate to the nature of the business being operated. In the present case, the shopping mall and parking lot were similar to that of *Cornpropst.*

■ In the present case, the plaintiff was an employee of a tenant of defendants who, at the "suggestion" of defendants, had been required by her employer to park in a remote part of the 95 acre parking lot.

Plaintiff asserts that an employee of a tenant who, at the suggestion of the lessor, has been instructed by her employer to park in a particular area, is subject to a "special relationship situation" with the landlord of the employer, as contemplated by *Cornpropst.* This Court cannot agree. It was the employer, Castner–Knott Co. which had authority to and did require plaintiff to park in the remote area of the parking lot. The defendants did not instruct plaintiff where to park, and only "suggested" to tenants where their employees should park. At least one tenant disregarded the suggestion and nothing was done to enforce compliance. It therefore appears that, whatever "special relationship" or duty might have existed was with the employer, there was no such special relationship or duty owed by defendants to plaintiff.

In this connection, it is interesting to note that a workers' compensation insurer has intervened in this case to enforce its subrogation rights under the workers' compensation law.

■ Appellee asserts that the defendants in the present case had ample warning of the imminence of danger and were thereby onerated with a duty of ordinary care to protect her. The same insistence was made in *Cornpropst,* to which the Supreme Court responded:

> In *Corbitt,* plaintiff was assaulted in a restroom at the Civic Coliseum in Knoxville. The Court of Appeals announced the following rule in that case:
>
> > We hold that if the owner is to be held liable for the sudden criminal acts of third persons there must be a showing that the owner was on notice in some

manner of the imminent probability of the act. Otherwise, there can be no issue for jury determination ...

. . . .

We are concerned in this case with the liability of the business establishments in Eastgate Shopping Center for the sudden criminal act of a temporarily or permanently depraved person, who according to the affirmative allegations contained in the complaint gave no notice by word, act, dress or deed prior to the commission of the attack that would have indicated to anyone an intention of purpose to commit an assault.

528 S.W.2d at 197.

It is clear from the foregoing that the rule in *Cornpropst* is that, in order to impose a duty upon the owners of a shopping mall parking lot to protect the users of the lot from violence, there must be actual notice of the "imminent probability of the act," as distinguished from the knowledge that other similar acts had occurred in the past and similar acts might occur in the future.

Plaintiffs cite a number of authorities from other jurisdictions based upon Section 344, Restatement of Torts 2d. However, in *Cornpropst*, the Tennessee Supreme Court said:

In our opinion it is a mistake to equate the duty of shopkeepers with respect to criminal acts with the duty of shopkeepers with respect to careless acts. Section 344 of the Restatement of Torts (Second) places both acts in exactly the same category in comment f.

528 S.W.2d at 197.

This Court is obliged to conform to the rule announced by the Tennessee Supreme Court rather than that announced in decisions of other jurisdictions or in Restatement of Torts.

The defendants have established their freedom from responsibility under the rule in *Cornpropst*. However, it should be noted that, although defendants had no duty under *Cornpropst*, defendants did provide a vehicle-mounted security guard in the lot who responded to the alarm of plaintiff. Also, there is uncontradicted evidence that defendants in the past furnished escort to timid persons on request, but received no such request from plaintiff. Moreover, the evidence is undisputed that plaintiff's employer has furnished guards for that part of the parking lot used by its employees.

■ Plaintiff's issue, quoted above, refers to "adequate lighting," but this subject is not pursued in plaintiff's brief, and it is considered waived.

For the reasons stated, the summary judgment of the Trial Court dismissing plaintiff's suit is affirmed. Costs of this appeal are taxed against plaintiff and her surety. The cause is remanded to the Trial Court for collection of costs incurred in that Court and for any other necessary, further proceedings.

Affirmed and Remanded.

LEWIS and KOCH, JJ., concur.