**Juanita LORD, Plaintiff,**

v.

**SARATOGA CAPITAL, INC., a California corporation; and Sun Pac, a California General Partnership, consisting of James F. Fox and W.M. Lyles Co.; Defendants.**

No. 94–2129/BraMl.

United States District Court,
W.D. Tennessee,
Western Division.

Nov. 14, 1995.

Charles J. Swayze, Jr., Whittington, Brock, Swayze & Dale, Greenwood, Mississippi, for plaintiff.

Louis J. Miller, H. Leo Beale, II, Waring Cox Morgan Keegan Tower, Memphis, Tennessee, for defendants.

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

McCALLA, District Judge.

### PROCEDURAL POSTURE

On July 29, 1995, both defendants, Saratoga Capital, Inc., ("Saratoga") and Sun Pac, submitted motions for summary judgment under Federal Rule of Civil Procedure 56 on all six causes of action alleged by plaintiff, Juanita Lord, in her Third Amended Complaint. On August 30, 1995, plaintiff filed answers to defendants' motions. On October 31, 1995, the Court held a hearing on the motions. Plaintiff and defendants have briefed the pertinent legal issues.

### FACTS

On December 27, 1992, plaintiff signed a lease to reside at Willow Lake Apartments in Memphis, Tennessee, which was/is owned by defendant Sun Pac and managed by defendant Saratoga. In the early morning on April 28, 1993, an unknown assailant entered plaintiff's apartment at Willow Lake through a window and committed burglary, rape, sodomy, and battery. As a result of these crimes, plaintiff suffered property loss, physical injuries, and severe emotional distress.

On February 22, 1994, plaintiff brought suit against defendant Saratoga, alleging four causes of action: 1) negligence in breaching the duty "to provide security, protection and a safe place to reside," 2) breach of the implied warranty of habitability and safety, 3) premises liability in failing to exercise reasonable care in addressing conditions known to pose an unreasonable risk of harm, and 4) product liability in leasing an apartment which was defective and unreasonably dangerous. On April 26, 1994, plaintiff filed her Second Amended Complaint,[1] alleging the same four causes of actions, but adding Sun Pac as a defendant. On May 16, 1994, Saratoga filed its Answer to the Second Amended Complaint. On June 30, 1994, Sun Pac filed its Answer. On November 3, 1994, plaintiff filed her Third Amended Complaint, adding two causes of action: 5) intentional misrepresentation in that Willow Lake employees told her that the complex had "security" and showed her a document purportedly authored by "Willow Lake Security" when, in fact, Willow Lake had no security personnel, and 6) negligent misrepresentation in that Willow Lake failed to exercise reasonable care in making the claims of "security." On November 18, 1994, Saratoga and Sun Pac each filed an answer to the Third Amended Complaint.

After several months of discovery by plaintiff and defendants, on July 29, 1995, Saratoga and Sun Pac filed separate motions for summary judgment under Federal Rule of Civil Procedure 56 as to all six causes of action asserted by plaintiff. Both Saratoga and Sun Pac have submitted briefs and supplemental briefs in support of their motions, and plaintiff has responded to each motion and submitted briefs in support of her responses. Finally, the Court has heard the oral argument of all parties in an October 31, 1995, hearing.[2]

### ANALYSIS

■■■ Saratoga moved for summary judgment on all of plaintiff's asserted causes of action on the grounds that no genuine issue of material fact exists and Saratoga is entitled to judgment as a matter of law in that plaintiff fails to make out prima facie cases. Sun Pac moved for summary judgment as to all of plaintiff's asserted causes of action on the theory that Sun Pac has effectively delegated its rights in the operation of Willow Lake Apartments to Saratoga, and, thus, only Saratoga could be liable to plaintiff. Disposition of both of defendants' motions requires the Court to consider first the frontal attack on plaintiff's asserted causes of action found in Saratoga's motion and accompanying briefs. For this purpose, only three of plaintiff's six asserted causes of action merit serious discussion: negligence, intentional misrepresentation, and negligent misrepresentation.[3]

■■■ In the context of summary judgment, the Court must determine whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the moving party establishes that there are no genuine issues of material fact, then summary judgment will be appropriate unless the nonmoving party establishes every element of its case on which it will have the burden at trial. *Celo-*

1. The First Amended Complaint of March 30, 1994, was identical to the Complaint, but was filed because no service of process was attempted for the Complaint.

2. On November 2, 1995, defendants submitted a supplemental brief on the issue of the causation element of a cause of action for misrepresentation, which had been highlighted in the October 31, 1995, hearing. By order of November 2, 1995, the Court afforded plaintiff the opportunity to submit a brief on the same issue. Plaintiff submitted a brief on November 7, 1995, and it has been considered along with the defendants' brief on this issue in drafting this order.

3. Although plaintiff agreed at the October 31, 1995, hearing that summary judgment should be granted as to the counts asserting implied warranty, premises liability, and product liability, the granting of summary judgment as to those counts was a foregone conclusion. Implied warranty and product liability are patently inapplicable to the case at bar, and premises liability is just another way to refer to a cause of action for negligence, which has already been asserted by plaintiff.

*tex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). According to the Sixth Circuit, this requires the nonmoving party to "put up or shut up" for the critical issues of its asserted causes of action. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989). In evaluating the evidence offered for the essential elements of the case, the evidence is viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). The essential elements of the nonmoving party's case are determined by reference to the substantive law of the case.

■■■ Under the principles of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the substantive law of this case is governed by the law of Tennessee. This Court has jurisdiction based on diversity of citizenship. The facts giving rise to this action occurred in Tennessee. A discussion of the evidence in this case with reference to the Tennessee law for negligence, intentional misrepresentation, and negligent misrepresentation follows.

## I. Negligence

■■■ To establish a prima facie case for negligence, a plaintiff must prove: 1) the defendant owed the plaintiff a duty of care, 2) the defendant breached that duty, 3) proximate causation, and 4) damages. *McClenahan v. Cooley,* 806 S.W.2d 767, 774 (Tenn.1991). Specific rules have developed for the negligence liability of a landowner for injuries resulting from dangerous conditions on the landowner's property. Tennessee law on the liability of landlords to tenants for the criminal actions of third parties is a specific application of the traditional elements of a negligence action. *See Speaker v. Cates Co.,* 879 S.W.2d 811 (Tenn.1994); *Tedder v. Raskin,* 728 S.W.2d 343 (Tenn.Ct. App.1987). Once a landlord is "on notice of an unreasonable risk or likelihood of danger to his tenants caused by a condition within his control," the landlord has a duty to "take reasonable steps to correct the problem within a reasonable time." *Tedder,* 728 S.W.2d at 348. A tenant must establish proximate causation by a showing "that the

injury [suffered by the tenant as a result of the criminal actions of a third party] was a reasonably foreseeable probability, not just a remote possibility, and that some action within the landlord's power more probably than not would have prevented the injury." *Id.* at 348–49. "If the injury was not reasonably foreseeable, then the criminal act of the third party would be a superseding, intervening cause of the harm, relieving the landlord of liability." *Id.* at 349.

### A. Duty

■■■ A landlord's duty arises when the landlord has notice. Notice may be actual or constructive. *See Benson v. H.G. Hill Stores, Inc.,* 699 S.W.2d 560, 563 (Tenn.Ct. App.1985). Constructive notice may be deemed to exist based on past criminal activity, but the crimes must be suggestive of the probability of the occurrence of a particular crime in the near future. *See Lewter v. O'Connor Management Inc.,* 886 S.W.2d 253, 256 (Tenn.Ct.App.1994) ("[O]rdinarily ... [other crimes must be] contemporaneous with or so closely connected in time with the injury to plaintiff as to 'pose an imminent probability of harm'"); *Goans v. Parkridge Hosp.,* No. 591, slip op. at 3 (Tenn.Ct.App. Oct. 1, 1982) (noting that constructive notice may arise when past crimes are "so numerous and so near in time that a likelihood of imminent harm exists"). Plaintiff claims that defendants may be charged with actual and constructive notice of the imminent probability of harm to the plaintiff. Plaintiff's Brief in Response to Defendant Saratoga's Motion for Summary Judgment (hereinafter, Plaintiff's Brief in Response to Saratoga), at 19–23. Defendants contend that plaintiff has offered no evidence of actual knowledge and that plaintiff's evidence of past criminal activity is insufficient as a matter of law to constitute constructive notice of the threat of harm to plaintiff. Brief in Support of Defendant Saratoga Capital, Inc.'s Motion for Summary Judgment (hereinafter, Saratoga's Brief), at 9; Defendant, Saratoga Capital, Inc.'s Supplemental Brief in Support of Its Motion for Summary Judgment (hereinafter, Saratoga's Supplemental Brief), at 12–17.

848

### 1. *Actual Notice*

Plaintiff makes an argument under the heading of constructive notice that the Court construes to be an argument for implied actual notice. Plaintiff's Brief in Response to Saratoga, at 20–23; *see Mowdy v. Kelly,* 667 S.W.2d 489, 494 (Tenn.Ct.App. 1983) (Cantrell, J., dissenting) (citing Black's Law Dictionary 1258 (3d ed. 1933)). Plaintiff has offered evidence that there was an attempted break-in at another apartment in the Willow Lake complex in the hours before plaintiff was assaulted and raped in her apartment. Harris Aff.; Police Report no. 930428–009131. Plaintiff contends that defendants should be charged with notice since, if defendants had exercised reasonable diligence, they would have known of the earlier break-in attempt and concluded that the same perpetrator would soon thereafter attempt to commit such a crime as actually befell the plaintiff. Plaintiff's Brief in Response to Saratoga, at 22. Even viewed in the light most favorable to plaintiff, the evidence supporting this argument cannot provide a sufficient basis for notice in this context. Although the times are confused,[4] Ms. Harris seems to have reported the attempted break-in either after the assailant entered plaintiff's apartment or so close in time as to not afford reasonable time for defendants to take preventative action. A further problem with this argument is the notion that knowledge of the attempted break-in at the Harris apartment should lead to the conclusion that plaintiff was in imminent danger that night.[5] Plaintiff has not made a sufficient showing of actual notice to trigger a duty owed from the defendants to the plaintiff, as required for a prima facie case for negligence.[6]

### 2. *Constructive Notice*

Plaintiff's argument on constructive notice based on past crime at Willow Lake is mistakenly labeled as an argument for actual notice. Plaintiff's Brief in Response to Saratoga, at 19–20. The caselaw on this type of notice requires that the prior criminal activity be "so numerous and so near in time to the present that a likelihood of imminent harm exists." *Goans v. Parkridge Hosp.,* No. 591, slip op. at 3 (Tenn.Ct.App. Oct. 1, 1982). For instance, in *Speaker v. Cates Co.,* 879 S.W.2d 811, 815 (Tenn.1994), the court held that twenty-five "criminal incidents" at the defendant's apartment complex over the prior six months did not constitute notice. In *Lewter v. O'Connor Management Inc.,* 886 S.W.2d 253, 256 (Tenn.Ct.App.1994), the

---

4. According to the police report and plaintiff's pleadings, plaintiff's assault ended at 3:25 a.m., April 28, 1995. Police Report no. 930428–009118. According to her affidavit, plaintiff was attacked "shortly" after midnight on April 28, 1995. Lord Aff. According to the police report and the affidavit of Ms. Harris, the attempted break-in of Ms. Harris' apartment occurred at 11:30 p.m., April 27, 1995. Police Report 930428–009131; Harris Aff. While Ms. Harris' affidavit indicates that she informed the police of the attempted break-in at approximately 2:00 a.m., April 28, 1994, in the Willow Lake parking lot, the police report indicates the crime was not reported until 11:45 p.m. on April 28, 1995. *Id.*

5. Although the police reports give distinct descriptions, *see* Police Reports no. 930428–009118, 930428–009131, plaintiff contends that it is likely that her attacker was the same man who attempted to burglarize Ms. Harris' apartment. Plaintiff's Brief in Response to Saratoga, at 22. However, it is no more reasonable to assume that a burglar who has been chased away from one apartment would look for another apartment in the same complex than it is to assume that the foiled burglar would flee the vicinity. Additionally, the break-in at plaintiff's apartment happened several hours after the burglar had been chased away from Ms. Harris' apartment. If anything, the threat of a second attempted break-in at Willow Lake was greatest in the time closest to the first attempted break-in. If attempted criminal activity anywhere in the Willow Lake apartments complex triggers a duty for the defendants to protect against all criminal activity in the Willow Lake apartment complex for a subsequent indeterminate length of time, then a single crime would impose a far broader duty than the law envisions. This clearly can not be the case.

6. Assuming that the defendants owed a duty to plaintiff triggered by this theory of notice, and that the notice should be charged to the defendants in the hours prior to the attack on plaintiff, plaintiff's proffered evidence on breach and causation would have to fall short. Plaintiff has offered no evidence of what would amount to reasonable care under such circumstances, so it is impossible to make the argument that defendants failed to live up to that standard of care. Further, plaintiff has offered no evidence to show that the exercise of reasonable care in the hours before the attack on plaintiff would have been more likely than not to prevent the attack.

court held eighteen incidents of assault or purse-snatching in a parking lot in the previous sixteen months insufficient to establish notice of the imminent probability of harm to plaintiff, who was assaulted in the parking lot. In *Kelton v. Park Place Center*, 1993 WL 415637 (Tenn.Ct.App. Oct. 12, 1993), the court held six robberies at a retail shopping center in the three and one half months prior to the attempted robbery and assault on the plaintiff insufficient to trigger a duty of care from management to the plaintiff.

 Plaintiff cites "fifty-six crimes" at Willow Lake Apartments from November 1, 1992, until the crimes against her on April 28, 1993. Plaintiff's Brief in Response to Saratoga, at 19–20. From an examination of the police records offered as Exhibit S to Plaintiff's Brief in Response to Saratoga, it is clear that the reference to fifty-six crimes over the approximately six month period is inaccurate.[7] The plaintiff was the victim of rape, sodomy, battery, and burglary, as the result of an unknown assailant entering her apartment through a window in the middle of the night. The law in this area dictates that only crimes that involved actual or attempted entry into an apartment should be considered in determining whether past crimes gave constructive notice of the probability of imminent harm to plaintiff. Within the roughly six month time period, there were, in addition to the attempted break-in of Ms. Harris' apartment and the break-in at plaintiff's apartment, seven burglaries of apartments at Willow Lakes. Of these seven, only one occurred at night and none appeared to have been accompanied by any assault or rape. There were no other assaults or rapes resulting from a perpetrator breaking into an apartment.[8] The remaining crimes include ten reports of malicious mischief, nine motor vehicle thefts, five larcenies from motor vehicles, and four other larcenies. Viewed gen-

erously, that is a total of thirty-five crimes in the roughly six months prior to the night plaintiff was attacked, but only the seven burglaries of apartments suggest the type of harm that ultimately befell plaintiff. Considering that the crime statistics apply to an almost 900 unit apartment complex in Memphis, as a matter of law, these figures do not bespeak the imminent probability of harm to the plaintiff required. Accordingly, plaintiff has not made a sufficient showing of constructive notice of criminal activity giving rise to duty on the part of the defendants to take reasonable measures to protect plaintiff from the sort of crime which she suffered.

### 3. Assumption of Duty

This theory is raised for the first time in Plaintiff's Brief in Response to Saratoga. Accordingly, the evidence and argument on this theory is sparse. Basically, plaintiff contends that by representing that they had "security," *see* discussion *infra* part II, defendants undertook to provide security and had a duty to exercise reasonable care in providing security to plaintiff. Plaintiff's Brief in Response to Saratoga, at 23–25. Defendant argues that, if assumption of duty is even recognized in Tennessee law in this area, substantial affirmative acts are required by a defendant to assume a duty to protect a plaintiff. Saratoga's Supplemental Brief, at 17–19.

Plaintiff cites three Tennessee cases as support for the proposition that assumption of duty exists in Tennessee for cases such as the one at bar. First, *Thomas v. General Elec. Co.*, 494 S.W.2d 493 (Tenn.1973), held that an employer did not assume the duty of protecting its employees from the criminal attacks of third parties by fencing its parking lot and hiring security guards. Plaintiff argues that this case recognizes that duty can be assumed in Tennessee. However, this

---

**7.** Plaintiff's total mistakenly includes motor vehicle recoveries, reports of missing persons, and reports of suspicious persons as crimes.

**8.** During the roughly six month period prior to plaintiff's attack, there were three reported sexual assaults and two reported aggravated assaults. Two of the sexual assaults involved a father allegedly sexually assaulting his minor daughters. The third sexual assault involved a resident alleg-

edly sexually assaulting a door-to-door salesperson. *See* Totty Aff. The two aggravated assaults seem to stem from one incident between two neighboring residents that was reported separately by each. None of the assaults seem to be relevant to the inquiry of determining whether defendants had constructive notice triggering a duty to the plaintiff.

case occurred before the *Cornpropst* line of cases that set out the Tennessee law on a landowner's liability to invitees for the criminal acts of third parties. *See Cornpropst v. Sloan,* 528 S.W.2d 188 (Tenn.1975); *Zang v. Leonard,* 643 S.W.2d 657 (Tenn.Ct.App.1982); *Tedder v. Raskin,* 728 S.W.2d 343 (Tenn.Ct. App.1987). Further, *Thomas* noted with approval that an employer's liability in such instances depends on "knowledge or notice of an unusual risk of assault by third persons." 494 S.W.2d at 496 (citing 53 Am.Jur.2d § 215 (1970)). Second, *Doe v. Linder Constr. Co.,* 845 S.W.2d 173, 181 (Tenn.1992), held that defendant builder-seller had not assumed a duty to protect plaintiff when it retained a pass-key to make certain repairs and that passkey was used by defendant's employees to gain entry and assault plaintiff. While this case did not reject the possibility that assumption of duty could be used in a negligence action based on injuries resulting from the criminal acts of third parties, the court did not endorse assumption of duty as a theory with which to obviate the more rigorous requirements of notice. Third, *Speaker v. Cates Co.,* 879 S.W.2d 811, 816 (Tenn.1994), did, as plaintiff points out, state: "With regard to negligence, the duty of one engaged by a landlord to carry out the landlord's duty of care owed to tenants is no greater than that of the landlord itself unless a greater duty is assumed." Such language taken alone would, as plaintiff contends, leave open the possibility of assumption of duty as a separate theory. However, the court goes on to state that "the duty to protect a tenant from the criminal act of a third party arises only when the landlord has notice of an unreasonable risk of harm to the tenant caused by a condition within the landlord's control." *Id.*

▮▮▮▮ From these cases, it does not appear that Tennessee law permits the use of assumption of duty as an alternate means for the imposition of duty on a landlord to protect against the criminal acts of a third party in the absence of notice. Even if the law of assumption of duty can be extended in the way urged by plaintiff, it is clear that undertaking to provide security would require affirmative acts far more substantial than the simple representations offered as evidence by the plaintiff.[9]

### B. Breach

Assuming the plaintiff has been able to offer sufficient evidence of notice giving rise to a duty of reasonable care owed by the defendants to the plaintiff, the plaintiff must then introduce sufficient evidence that such a duty has been breached. Plaintiff and defendants have offered expert testimony and other evidence on this point. It should suffice, given the conclusions reached elsewhere in this order, that there is a genuine issue of material fact on this piece of the prima facie case for negligence. *But see supra* note 6 (discussing the insufficiency of proof of breach of a duty arising from notice of the attempted break-in on the evening of April 27, 1995).

### C. Proximate Cause

▮▮▮▮ The Tennessee law on proximate causation in negligence actions is set out in *McClenahan v. Cooley,* 806 S.W.2d 767, 775 (Tenn.1991):

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and [sic] (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

Specifically for negligence actions against landlords for the criminal acts of third parties, "the plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the landlord's power more probably than not would have prevented the injury." *Speaker v. Cates Co.,* 879 S.W.2d 811, 814–15 (Tenn.1994) (quoting *Tedder v. Ras-*

---

9. Causes of action for intentional misrepresentation and negligent misrepresentation already exist in Tennessee law. To adopt the legal standard suggested by plaintiff would unduly confuse and combine distinct legal theories.

*kin,* 728 S.W.2d 343, 348–49 (Tenn.Ct.App. 1987)). Plaintiff contends that her injuries were proximately caused by defendants' breach of their duty of care to plaintiff—that is, the defendants' failure to take such security measures as would have prevented the attack on the plaintiff. Plaintiff's Brief in Response to Saratoga, at 25–27. The defendants contend that plaintiff's injuries were proximately caused by the criminal acts of a third-party over whom defendants exercised no control. Saratoga's Brief, at 11–13. The parties' arguments highlight the importance of consideration of the law of superseding and intervening cause. Unless the plaintiff's injury was reasonably foreseeable, "the criminal act of the third party would be a superceding [sic], intervening cause of the harm, relieving the landlord of liability." This follows from the rule that "where two distinct causes, unrelated in operation, contribute to an injury, one of them being a direct cause and the other furnishing the condition by which the injury was made possible, the former alone is responsible for the result." *Ward v. University of South,* 209 Tenn. 412, 354 S.W.2d 246, 251 (1962).

■ On the key issue of the foreseeability of the injury suffered by plaintiff due to the criminal attack of the unknown third party, plaintiff offers the same evidence of prior crime discussed *supra* part I.A.2. Additionally, the plaintiff attempts to offer the affidavit of another Willow Lake resident who claimed to be scared by the crime in the area, *see* Wall Aff., but such evidence is not relevant, and can not be considered by the Court in evaluating the proffered proof on foreseeability. Given that the evidence of prior crimes was insufficient to establish constructive notice, this Court has a relatively easy time in deciding that plaintiff has not offered sufficient evidence that plaintiff's injuries were proximately caused by the negligence of the defendants rather than the unforeseen acts of a third party over whom the defendants exercised no control.

### D. Damages

There is no dispute that plaintiff suffered damages as a result of the attack, and plaintiff has offered sufficient evidence to survive summary judgment on this point.

### II. Intentional Misrepresentation

■ A prima facie case for a cause of action for intentional misrepresentation requires the plaintiff to establish that: 1) the defendant made an affirmative representation of fact to the plaintiff, 2) the representation was false, 3) defendant made such representation with knowledge or reckless disregard of its falseness, 4) the representation pertained to a material fact, 5) plaintiff justifiably relied on the representation, and 6) plaintiff's reliance on the representation caused the plaintiff an injury. *Speaker v. Cates Co.,* 879 S.W.2d 811, 816 (Tenn.1994); *First Nat'l Bank of Louisville v. Brooks Farms,* 821 S.W.2d 925, 927 (Tenn.1991).

### A. Representation

■ Plaintiff contends that on two occasions prior to the execution of her lease at Willow Lake two separate Willow Lake representatives told her that Willow Lake had "security." Lord Aff.; Lord Dep. 31, 52–54. Additionally, when executing her lease, plaintiff was shown, and asked to initial, a document purportedly authored by "Willow Lake Security." Lord Aff; Lord, Dep. 53–54; Plaintiff's Response to Defendant Saratoga's Motion for Summary Judgment (hereinafter, Plaintiff's Response to Saratoga), Ex. L. While the oral statements and written use of "Willow Lake Security" lack specificity, the Court concludes that, viewed in the light most favorable to the plaintiff, there is a genuine issue of material fact as to whether these constituted affirmative representations of fact made by the Saratoga's agents to plaintiff.

### B. Falsity

■ The falsity of the alleged representations of "security" depends on the meaning of "security" in this context. Plaintiff urges that "security" means personnel who patrol or monitor the Willow Lake complex. Plaintiff Brief in Response to Saratoga, at 5–7; Lord Aff. Defendants concede that Willow Lake did not have "security" in this sense of the word. *See* Totty Dep. at 24. However,

defendants contend that "security" means the locks, photocell lights, and other non-sentient devices which the apartments and complex did have. Saratoga's Supplemental Brief, at 8–9. While the meaning urged by defendants may be inconsistent with the purported authorship of the document initialled by plaintiff, it is not necessary for the Court to determine the proper interpretation of "security." It is enough that the Court concludes that there is a genuine issue of material fact as to whether "security" meant security personnel and whether Willow Lake did not have such.

### C. Knowledge or Recklessness

Plaintiff's offered proof on whether the Willow Lake representatives made the representations of "security" with knowledge or reckless disregard of its falsity is in the nature of circumstantial evidence. The Willow Lake representatives undoubtedly knew that Willow Lake did not have security personnel in December 1992. For the purposes of this element, it is not necessary that plaintiff prove that defendants intended to lie to plaintiff to induce her to sign the lease. Given the findings on the existence of genuine issues of material fact on the first two elements of a cause of action for intentional misrepresentation, it is sufficient that the Court finds that there is a genuine issue of material fact as to whether the Willow Lake representatives made the representations of "security" with knowledge or reckless disregard of the falsity of such representations.

### D. Materiality

A material fact in this context is one that a potential renter would take into consideration in deciding whether to lease. Plaintiff has offered proof that she would not have signed the lease at Willow Lake if it had not been represented to her that Willow Lake had "security." Lord Aff. Viewed in the light most favorable to plaintiff, that is sufficient to raise a genuine issue of material

fact as to whether the representations pertained to a material fact.

### E. Justifiable Reliance

#### 1. Reliance

Plaintiff offered evidence that she would not have entered into the lease to rent at Willow Lake if not for the representation that Willow Lake had "security." Lord Aff. Defendants have offered evidence that plaintiff did not look at any apartment complexes other than Willow Lake and became interested in Willow Lake based on the recommendations of friends. Lord Dep. at 27–29. Viewed in the light most favorable to plaintiff, there is a genuine issue of material fact as to whether plaintiff did in fact rely on the representations of security in deciding to rent an apartment at Willow Lake.[10]

#### 2. Justifiability

Justifiability, like reasonableness, is particularly an issue for jury determination. Such a determination is made in consideration of all facts and circumstances. Plaintiff has offered evidence of the circumstances of the representations of "security" and her decision to rent from Willow Lake based on those representations. Defendants argue that plaintiff could not have justifiably relied on the representations of "security" given a lease provision denying that defendants had a duty to protect plaintiff and security disclaimer disavowing liability for the criminal acts of third parties. Plaintiff's Response to Saratoga, Ex. K, § 28; Plaintiff's Response to Saratoga, Ex. P. Since such provisions will not be given effect in the presence of misrepresentations, see *First Nat'l Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925, 928 (Tenn.1991), it is proper that these provisions be considered only insofar as they fit into the total mix of evidence relating to the justifiability of reliance. Viewed in the light most favorable to plaintiff, there is a genuine issue of material fact as to the justifiability of plaintiff's reliance on

10. Saratoga also points to evidence concerning plaintiff's stay at Willow Lake between her entering into the lease and her attack. *See* Saratoga's Supplemental Brief, at 7. The Court considers that such evidence is not relevant to the issue of reliance, but is more properly considered in the context of the affirmative defenses raised in defendants' answers but not argued in the summary judgment motions.

the representations of "security" to require jury determination.

### F. Causation

 Plaintiff's proffered evidence that she rented her apartment at Willow Lake based on the misrepresentations of "security" suggests causation in fact for plaintiff's injuries. Proximate causation requires the additional showing that plaintiff's injuries were the natural and foreseeable result of the misrepresentations. In contrast to the discussion of proximate causation as an element of a cause of action for negligence, *supra* part I.C., plaintiff's injury is arguably the precise injury against which the promise of "security" would have protected. While proof on whether "security" would have prevented the attack on plaintiff is inherently uncertain, evaluation of such proof is particularly the province of a jury. Plaintiff has offered expert testimony to the effect that "security" likely would have prevented the attack, *see* Kennedy Dep., and defendants have offered their own expert testimony to the contrary. *See* Whitlatch Rep. Viewed in the light most favorable to plaintiff, there is a genuine issue of material fact as to causation that requires a jury determination.

### III. Negligent Misrepresentation

 To establish a prima facie case for negligent misrepresentation, a plaintiff must prove: 1) the defendant made an affirmative representation of fact to the plaintiff, 2) the representation was false, 3) defendant failed to exercise reasonable care with respect to the falsity of such representation, 4) the representation pertained to a material fact, 5) plaintiff justifiably relied on the representation, and 6) plaintiff's reliance on the representation caused the plaintiff an injury. *John Martin Co. v. Morse/Diesel, Inc.,* 819 S.W.2d 428, 431 (Tenn.1991); *McElroy v. Boise Cascade Corp.,* 632 S.W.2d 127, 130 (Tenn.Ct.App.1982).

### A. Representation

Viewed in the light most favorable to plaintiff, the same evidence discussed *supra* part II.A. is sufficient to create a genuine issue of material fact for this element.

### B. Falsity

Viewed in the light most favorable to plaintiff, the same evidence discussed *supra* part II.B. is sufficient to create a genuine issue of material fact for this element.

### C. Material Fact

Viewed in the light most favorable to plaintiff, the same evidence discussed *supra* part II.C. is sufficient to create a genuine issue of material fact for this element.

### D. Negligence

 The evidence that defendants failed to exercise reasonable care in ascertaining the falsity of the representations or in communicating known falsehoods is closely related to the evidence discussed *supra* part II.D. As to the use of "Willow Lake Security" on the document initialled by plaintiff when executing her lease, the evidence that such was "in error" and "should never have been put there" clearly suggests something less than reasonable care. Totty Dep., at 22–22. Viewed in the light most favorable to plaintiff, there is a genuine issue of material fact for this element.

### E. Justifiable Reliance

#### 1. Reliance

Viewed in the light most favorable to plaintiff, the evidence discussed *supra* part II.E.1. is sufficient to create a genuine issue of material fact as to this element.

#### 2. Justifiability

Viewed in the light most favorable to plaintiff, the evidence discussed *supra* part II.E.2. is sufficient to create a genuine issue of material fact as to this element.

### F. Causation

Viewed in the light most favorable to plaintiff, the evidence discussed *supra* part II.F. is sufficient to create a genuine issue of material fact as to this element.

*IV. Sun Pac's Motion for Summary Judgment Based on Delegation to Saratoga*

■ Sun Pac moves for summary judgment based on its effective delegation of rights and duties to Saratoga in a management agreement. Given the conclusions reached earlier in this Order,[11] it is only necessary to consider whether Sun Pac's contractual relationship with Saratoga can remove it from potential liability for intentional misrepresentation or negligent misrepresentation. The Management Agreement between Sun Pac and Saratoga makes Saratoga responsible for operation of Willow Lake Apartments and specifies that Willow Lake employees are employees of Saratoga, not Sun Pac. Plaintiff's Response to Defendant Sun Pac's Motion for Summary Judgment, Ex. A. Plaintiff has offered no evidence or pertinent caselaw that would make the Court doubt that the contractual and organizational separation of Sun Pac and Saratoga should not be respected.

### CONCLUSION

Defendant Saratoga's motion for summary judgment is GRANTED with respect to the asserted causes of action for negligence, implied warranty, premises liability, and product liability. Defendant Saratoga's motion for summary judgment is DENIED with respect to the asserted causes of action for intentional misrepresentation and negligent misrepresentation. Defendant Sun Pac's motion for summary judgment is GRANTED.

SO ORDERED.

---

**11.** The granting of summary judgment as to Saratoga on four of plaintiff's causes of action would, of course, apply to Sun Pac, even though Sun Pac did not specifically assert the same arguments asserted by Saratoga in its motion for summary judgment.