IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 14, 2007 Session

## CHERYL BROWN GIGGERS, ET AL. V. MEMPHIS HOUSING AUTHORITY, ET AL.

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-000896-03     Kay S. Robilio, Judge

No. W2006-00304-COA-R3-CV - Filed August 3, 2007

This appeal involves a wrongful death action arising from the fatal shooting of a tenant at a public housing property. The decedent was in the manager's office of the apartment complex when another tenant, who was involved in an altercation with a security guard on the premises, obtained a rifle from his apartment and began shooting at the security guard. The decedent was struck and killed by a bullet fired by the other tenant during the incident. The plaintiffs, the surviving children and sister of the decedent, sued the defendant owner and operator of the public housing property, asserting claims for wrongful death through negligence and breach of contract per the lease agreement. The trial court granted the defendant's motion for summary judgment. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Archie Sanders, III, Memphis, TN, for Appellants

C. Wesley Fowler, Memphis, TN, for Appellee, Memphis Housing Authority

Joe Lee Wyatt, William J. Wyatt, Memphis, TN, for Appellee, Scruggs Security & Patrol, LLC

## OPINION

## I. FACTS & PROCEDURAL HISTORY

The facts underlying the shooting incident at issue are undisputed. In 2002, the decedent, Charles Cornelius Brown, Sr., was a resident of an apartment complex owned and operated by Memphis Housing Authority ("MHA" or "Appellee"), located at 741 Adams Avenue in Memphis, Tennessee. The shooter, L.C. Miller, who was 70 years of age at the time of the shooting, was also a tenant at this property. On March 7, 2002, Mr. Miller was asked to stop "using bad language and cursing" by a security guard for Scruggs Security & Patrol, LLC ("Scruggs"), a company with which MHA had contracted to provide security for the property. The security guard then left his station to visit the restroom, and Mr. Miller briefly went back to his own apartment. When the security guard emerged from the restroom, Mr. Miller, who had apparently retrieved a rifle from his apartment, began shooting at him. The decedent Mr. Brown, who was in the manager's office of the apartment complex, was struck and killed by one of the shots fired by Mr. Miller.

On February 18, 2003, Mr. Brown's surviving children, Cheryl Brown Giggers, Charles C. Brown, Jr., Angela G. Brown, and Joann Fisher, his surviving sister ("Plaintiffs" or "Appellants"), filed a complaint against the City of Memphis ("the City") and MHA asserting claims for the wrongful death of the decedent as a result of negligence, and for breach of contract pursuant to Mr. Brown's lease agreement. Plaintiffs alleged negligence by the defendants in failing to properly screen Mr. Miller prior to leasing an apartment to him, failing to enforce internal admissions and occupancy policies with regard to Mr. Miller, allowing Mr. Miller to possess a rifle, and failing to properly assess an allegedly known threat or risk to the other tenants of the public housing property. Plaintiffs further asserted that the defendants had breached their lease agreement with Mr. Brown by failing to keep or maintain a "safe condition" at the premises. The City filed a motion to dismiss, or alternatively, for summary judgment, arguing that it was not a proper party to the litigation and that MHA existed as a separate entity. On September 12, 2003, the trial court entered an order dismissing the City from the action and granting leave to Plaintiffs to amend their complaint.

Plaintiffs amended their complaint to name MHA as the sole defendant on September 16, 2003. MHA filed its answer on April 28, 2004, in which it denied all liability and set forth several affirmative defenses. On May 27, 2004, Plaintiffs filed a second amended complaint, adding Scruggs as a defendant and alleging that Scruggs had negligently failed to secure the property pursuant to its security contract with MHA. On August 20, 2004, Scruggs filed its answer in which it denied liability and set forth various affirmative defenses. Scruggs asserted a cross-claim against MHA alleging that it was negligent in screening Mr. Miller prior to his tenancy and negligent in renting an apartment to him. Scruggs also sought indemnity in defending the litigation pursuant to a provision in its contract with MHA. MHA in turn filed its own cross-claim, alleging that Scruggs was vicariously liable for the negligent acts of its security guard, and that MHA was entitled to indemnity from Scruggs pursuant to their security contract.

On February 11, 2005, MHA filed a motion to dismiss or for summary judgment as to all claims against it. On September 9, 2005, Plaintiffs took the deposition of Howard Terry, the head of security for MHA, whose primary duties consisted of conducting background checks for new tenants and submitting incident reports to MHA operations. Mr. Terry was questioned about the shooting that occurred on March 7, 2002, as well as Mr. Miller's history with MHA. The record indicates that MHA had conducted a criminal background check on Mr. Miller through the Memphis Police Department on January 27, 1996. The MHA interoffice memorandum describing the results of this investigation, which purported to include "all incidents within the last three (3) years[,]" clearly indicates that the investigation did not uncover information that would prevent Mr. Miller from being housed with MHA, pursuant to its own policies.

During the deposition of Mr. Terry, counsel for Appellants introduced several exhibits documenting a 1998 incident in which Mr. Miller had attempted to stab another tenant after a verbal altercation. With regard to the 1998 attempted stabbing incident involving Miller and another tenant, the record contains a description of the incident by Mr. Terry in his deposition, and two MHA reports. According to the first report, on or around May 7, 1998, the victim of the attack had been singing outside of the apartments when Mr. Miller became angry and stated, "I'll kill you if you don't stop singing in my ear." Mr. Miller later "jumped out of some bushes swinging a knife [and] scratching the victim on the arm." A later report was issued on May 30, 1998, after the police had done a follow-up investigation during patrol of the apartments. That report states that the victim refused medical treatment from being cut on his arm with a pocket knife by Mr. Miller, and that the victim "decided not to press charges at the time but eventually had taken legal measures due to constant verbal threats from [Mr. Miller]." The report further indicated that Mr. Miller was arrested for assault on that date. MHA thereafter sent Mr. Miller a letter notifying him that he was being placed on probation for one year, and that future violations of any nature would be cause for termination of his lease. Mr. Howard testified that he did not specifically recall the prior incident, but that he was not surprised to learn of Miller's one-year probation. He also stated that he was not responsible for making recommendations to MHA or making decisions regarding evictions of tenants, but that he understood a "one-strike" policy to be in effect by which a tenant "could be evicted" for "anything that's disruptive to or harm [sic] any of the people in public housing."

Plaintiffs filed a memorandum in opposition to MHA's motion for summary judgment on October 25, 2005. Plaintiffs submitted the following facts in support of its motion, among others:

> 4. L.C. Miller was charged with aggravated assault in Memphis, Shelby County, Tennessee, in 1979. (See police record of L.C. Miller, Exhibit 3).

> 5. In June 1977, L.C. Miller pled guilty to firing a weapon within the city limits. (See police record of L.C. Miller, Exhibit 3).

> 6. In the [sic] May 1998, Mr. Miller, while a resident of the property at 741 Adams Avenue, hid behind some bushes and attempted to stab

another tenant with a knife and was charged with aggravated assault. (See police record of L.C. Miller, Exhibit 3) and MHA Office Report, Exhibit 7.

7. On May [sic] 7, 2002, Charles C. Brown, Sr. was shot and killed in the lobby of the MHA property located at 741 Adams Avenue by L.C. Miller.

8. Prior to May [sic] 2002, there had been between 10 to 20 shooting incidents on MHA property. (Deposition of Howard Terry at pg. 44).

Plaintiffs argued that "MHA clearly had notice of the propensity for violence of Mr. Miler." They asserted that "MHA had actual notice of the 1998 incident where Mr. Miller with premeditation[] hid behind bushes waiting for another tenant and attempted to stab that tenant with a knife" and that "[d]espite its knowledge of the violent history of Mr. Miller, MHA took no steps to either remove him as a tenant or to monitor closely his behavior." Plaintiffs cited the deposition testimony of Mr. Terry, in which he stated his opinion that Mr. Miller's lease should have been terminated in 1998 after the attempted stabbing incident, and they argued that there remained an issue of material fact as to whether MHA had a duty to remove Mr. Miller from his residence at the property. Plaintiffs further argued that MHA's failure to so act constituted "a breach of its obligation under its lease agreement with Mr. Brown by failing to maintain a 'safe condition' on the premises as required by the lease." Plaintiffs also argued that "MHA failed to follow its own policies with regard to screening applicants, renting to knowingly violent persons and allowing tenants to maintain fire guns [sic] on the premises."

The trial court held a hearing on MHA's summary judgment motion on October 28, 2005, however, Appellants did not file a transcript of these proceedings with the record on appeal. The trial court treated MHA's motion as one for summary judgment, and in written correspondence to the parties on November 28, 2005, the Honorable Kay S. Robilio set forth her findings and conclusions as follows, in relevant part:[1]

> Defendant MHA moves for Summary Judgment on several grounds, arguing that MHA is not liable to Plaintiff/Decedent for the shooting that occurred on March 7, 2002. Plaintiff bases the claim on several theories of liability which Defendant argues are either non-existent or inapplicable to the instant matter. The Court is presented with both negligence and contract claims which will be dealt with in that order.

---

[1] Although the issue is beyond the scope of our review on appeal, the trial court's letter also addressed MHA's argument that any duty MHA owed to its residents regarding security was delegated to Scruggs Security. The trial court ruled that the defendants' contract operated to delegate MHA's duties, regarding security matters, to Scruggs.

-4-

In order for Plaintiff to make a negligence claim, Plaintiff must show a duty owed by MHA to Decedent. Plaintiff argues that MHA's internal policies set forth the duty and the failure to do so [sic] evinces a breach of that duty. Such a supposition is incorrect. Tennessee cases have not found internal policies to create a legal duty and have even questioned whether internal policies are admissible for any purpose whatsoever. *Gibbs v. Robin Media Group*, 2000 WL 1207201, *3 (Tenn. Ct. App. 2000). As the case law in Tennessee is against Plaintiff's proposition, the Court holds that the internal policies of MHA created no duty on MHA's part.

Plaintiff also argues that Defendant owed a duty to all residents to conduct criminal background checks. While there is scant case law in Tennessee relating to any "required" criminal background checks, the cases present[ed] run counter to Plaintiff's argument. *See Herndon v. Hughes*, 1998 WL 90745 (Tenn. Ct. App. 1998). Defendant not only asserts this, MHA also points out that a criminal background check was undertaken. The results did not present MHA with any evidence that would preclude Miller from leasing an apartment. Plaintiff has not shown any deficiency in Defendant's background check or shown what would remedy the alleged breach of that duty. Beyond the case law on this issue, public policy mandates that the Court reject Plaintiff's argument. In the event that Plaintiff's proposition was adopted, the result would be a massive underclass of ex-convicts homeless due to an inability to find housing. As this would be an untenable result, the Court rejects Plaintiff's argument that there is an affirmative duty on the part of MHA to conduct a criminal background check of a prospective resident.

. . .

Plaintiff's remaining claims are contractual in nature, based on the lease contract between MHA and Miller, the shooter. Defendant argues that Plaintiff has no standing to make any claim based on MHA's alleged breach. Tennessee case law, as well as every other jurisdiction, limits standing to either the parties or intended third party beneficiaries. *See J.S. Haren Co. v. City of Cleveland*, 2003 WL 21276662, *5 (Tenn. Ct. App. 2003); *Owner-Operator Indep. Drivers Assoc. v. Concord EFS*, 59 S.W.3d 63, 68 (Tenn. 2001). As Plaintiff cannot meet the requirements set forth in *Haren*, Decedent could be characterized as a [sic] incidental third party beneficiary, incapable of granting Plaintiff standing to make any contractual claim based on the contract between MHS [sic] and

Miller.

On January 18, 2006, the trial court entered an order granting MHA summary judgment on all claims. In the order, the court stated its conclusion that "there exists no duty running from the Defendant The Memphis Housing Authority to the Plaintiffs in this matter with respect to the criminal actions of Mr. L.C. Miller, which actions resulted in the death of Plaintiffs' decedent." The trial court certified the judgment in favor of MHA as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Plaintiffs filed a timely notice of appeal.

## II. ISSUES PRESENTED

Appellants present the following issue for review on appeal:
Whether the trial court erred by granting summary judgment in favor of MHA on Plaintiffs' claims for negligence and breach of contract.

Finding no error, we affirm the judgment of the trial court.

## III. STANDARD OF REVIEW

Our Supreme Court has articulated the appropriate standard of review for an appeal of a trial court's grant of summary judgment as follows:

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.03 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim. (footnote omitted)

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples v. CBL & Assocs.*, 15 S.W.3d 83, 88-89 (Tenn. 2000).

## IV. DISCUSSION

On appeal, Appellants contend that the trial court erred when it granted summary judgment against them on their claims for negligence and breach of contract. As to the former cause of action, Appellants argue that MHA had notice of the propensity for violence of Miller, the shooter, stemming from the 1998 incident in which he was involved in an altercation with another tenant and attempted to stab the tenant in the arm with a pocket knife. Appellants rely upon *Staples*, 15 S.W.3d at 89, in which the Tennessee Supreme Court reiterated that "[i]n assessing whether a duty is owed in a particular case, courts must apply a balancing approach, based upon principles of fairness, to identify whether the risk to the plaintiff was unreasonable." They also cite *Tedder v. Raskin*, 728 S.W.2d 343, 348 (Tenn. Ct. App. 1987), for the Middle Section of this Court's discussion of landlord liability for the criminal acts of third parties and the holding that "[o]nce notice sufficient to cause a reasonably prudent person to foresee the probability of harm is received, the duty to act arises and the failure to take reasonable steps to correct the problem within a reasonable time is a breach of that duty."

Appellants assert that "[d]espite its knowledge of the violent history of Miller, which included an attack against another MHA residence [sic], MHA took no steps [to] either remove him as a tenant or to monitor closely his behavior." They argue that nothing in the record indicates "that MHA set up any type of procedure to monitor Miller's actions or to require that he receive any counseling" and that MHA "essentially allowed a ticking time bomb to exist." Appellants apparently have abandoned their theories of liability of MHA based upon negligence in screening Miller prior to leasing an apartment to him, as well as their claim that MHA negligently allowed Miller to possess a rifle in his apartment. They continue to rely on the theory that, based upon notice of a foreseeable risk of danger to other tenants, MHA had a duty to monitor Miller's actions closely after the 1998 incident, or to evict him.[2] We must examine the record considered by the trial court and determine whether summary judgment was appropriate on the issue of whether MHA possessed a duty to take the actions advocated by Appellants or otherwise protect Mr. Brown from the criminal actions of L.C. Miller.

To establish negligence, one must prove: (1) a duty of care owed by defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal cause. *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996). The question of the duty owed by a defendant to a plaintiff is a question of law to be determined by the trial court. *Id.* Duty is the legal obligation owed by a defendant to a plaintiff to conform to a reasonable person standard of care for protection against unreasonable risks of harm. *Id.* A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by a defendant's conduct outweigh the burden upon a defendant to engage in alternative conduct that would have prevented the harm. *Staples*, 15 S.W.3d at 90 (citing *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)).

The Middle Section of this Court discussed at length the standards for analyzing the liability of landlords for the criminal acts of third parties in *Tedder*, 728 S.W.2d at 346-51. In that case, the plaintiffs, a mother and son, were tenants in an apartment complex. *Id.* at 345. Early one morning, while asleep in their apartment, the son was shot in the head after a bullet, fired from the apartment next door, came through the wall of his bedroom. *Id.* This gunshot was apparently fired during an attempted robbery of the apartment next door. *Id.* at 351. Several months earlier, the plaintiff mother and a friend had complained to the apartment manager about being unable to find a parking spot because of the number of people coming in and out of the apartment next door, and they voiced

---

[2] MHA contends that Plaintiffs' failure to specifically plead this theory, which it refers to as "failure to evict," in their complaint prevents our consideration of this issue on appeal. While it is clear that Plaintiffs' claims have shifted somewhat throughout this case, we believe that Plaintiffs' allegation in their complaint that MHA negligently failed to adhere to its own policies, together with Plaintiffs' discussion of their eviction theory in the opposition to MHA's motion for summary judgment, was sufficient to fairly apprise MHA of their intended claims. We note a prior holding by the Middle Section of this Court: "[t]he formal issues framed in the pleadings are not controlling on a motion for summary judgment. A court should also consider the issues presented by the other materials offered by the parties to determine whether the motion should be granted." *Knight v. Hosp. Corp. of Am.*, No. 01A01-9509-CV-00408, 1997 Tenn. App. LEXIS 11, at *11-12 (Tenn. Ct. App. Jan. 8, 1997). As it appears that this theory was presented for the trial court's consideration on summary judgment, we find no harm in considering the issue on appeal.

concerns that illegal activity was taking place in the neighboring apartment. *Id.* at 345-46. After the shooting, the plaintiffs sued the owner and operator of the apartment complex, alleging, among other theories, that the defendant "breached a duty to provide them a reasonably safe place to live by failing to protect them from dangers inherent in living next door to an alleged drug dealer." *Id.* at 346. After the plaintiffs presented their proof at trial, the trial court granted the defendant landlord's motion for a directed verdict. *Id.*

Writing for the majority in a decision based upon the plaintiffs' appeal, Judge Cantrell held that "the same standard of care should apply to both the innkeeper and the landlord in the area of liability for injuries to tenants resulting from third-party crimes on the premises[,]" explaining:

> In other words, ordinary negligence principles apply. The landlord is not an insurer of his tenants' safety, but he can be held liable "where the injury of the guest [tenant] by the third party was made possible by the failure of the innkeeper [landlord] to exercise reasonable care under the circumstances." [*Zang v. Leonard*, 643 S.W.2d 657, 664 (Tenn. Ct. App. 1982)].
>
> We do not perceive this extension of the common law as placing an undue burden on landlords. As in other negligence actions, the plaintiff will have to prove that the landlord was on notice of an unreasonable risk or likelihood of danger to his tenants caused by a condition within his control. Once notice sufficient to cause a reasonably prudent person to foresee the probability of harm is received, the duty to act arises and the failure to take reasonable steps to correct the problem within a reasonable time is a breach of that duty.
>
> However, the plaintiff must further prove that the landlord's failure to act was the proximate cause of the injury. To meet this burden, the plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the landlord's power more probably than not would have prevented the injury . . . . If the injury was not reasonably foreseeable, then the criminal act of the third party would be a superceding, intervening cause of the harm, relieving the landlord of liability.

*Tedder*, 728 S.W.2d at 348-49. The Court of Appeals went on to affirm the trial court's grant of the defendant's motion for a directed verdict, finding that "the attempted burglary by a third party was an unusual, unlikely, or remotely possible result (if a result at all) of the drug dealing, and was thus an intervening, superceding cause of the plaintiffs' injuries, relieving the defendants of liability for negligence." *Id.* at 351.

The Tennessee Supreme Court expressed agreement with *Tedder*'s discussion of the

appropriate standard of care for landlords and tenants in situations involving criminal acts of third parties in ***Doe v. Linder Constr. Co., Inc.***, 845 S.W.2d 173 (Tenn. 1992). In *Doe*, the plaintiff was the purchaser of a home in a "planned unit development" who was raped by two contractors who had gained key access to the residence. *Doe*, 845 S.W.2d at 175. The plaintiff sued the seller-builder of her residence, its construction supervisor, the realtor, the realtor's employee who sold the residence to the plaintiff, and the homeowner's association, asserting various theories of negligence. *Id.* The trial court found that the criminal assault was an independent intervening act and granted summary judgment in favor of the defendants. *Id.* The Court of Appeals held that the case presented issues of fact for the jury, and reversed. *Id.*

Although the facts before the Supreme Court were distinguishable from *Tedder*, the *Doe* Court cited that decision's statement "that the landlord is not an insurer but can be held liable when his or her failure to exercise reasonable care under the circumstances was the proximate cause of injury to the tenant." *Id.* at 178 (citing ***Tedder***, 728 S.W.2d at 348). The Court also discussed several other holdings by our courts regarding the proof necessary to impose liability in similar situations:

> Many cases in which the plaintiff was injured by the criminal acts of persons other than the defendant have been decided by the Tennessee appellate courts against the plaintiff for failure to present facts sufficient to establish the elements of negligence. For instance, in ***Cornpropst v. Sloan***, 528 S.W.2d 188 (Tenn. 1975), a shopper who was assaulted in a shopping center parking lot brought an action in negligence against the owners of the shopping center and the businesses located in the center. In affirming the trial court's dismissal of the action upon finding no breach of duty and no proximate cause, the Court stated:
>
>> At common law, a private person or corporation, as distinguished from governmental units, had no duty whatsoever to protect others from the criminal acts of third parties. That general rule has remained steadfast in the tort law of this country, despite the exceptions that have appeared from time-to-time, where special relationships and special circumstances have combined to impose liability.
>
> ***Cornpropst***, 528 S.W.2d at 191. The Court then reviewed the law generally and the case of ***Railroad v. Hatch***, 116 Tenn. 580, 94 S.W. 671 (Tenn. 1906) (absent reasonable grounds for an apprehension of danger the railroad would not be liable for an attack on one passenger by another), and stated:
>
>> The significance of *Hatch* to our inquiry is that where the highest degree of care characterized the relationship, the criminal acts of third parties imposes

> [sic] no liability unless there are present special circumstances that create in the minds of reasonable men an apprehension of danger.

*Cornpropst*, 528 S.W.2d at 192. Finally, the Court approved of the following statement from *Corbitt v. Ringley-Crockett, Inc.*, 496 S.W.2d 914 (Tenn. App. 1973), in recognizing one special circumstance:

> We hold that if the owner is to be held liable for the sudden criminal acts of third persons there must be a showing that the owner was on notice in some manner of the imminent probability of the act. Otherwise, there can be no issue for jury determination. There is no such showing in this record. The Trial Court should have directed a verdict for the defendants.

*Corbitt*, 496 S.W.2d at 919.

*Id.* at 183-84. The Court affirmed the trial court's dismissal of the plaintiff's action, concluding that "[t]o hold as negligence the failure to prevent the theft or unauthorized taking of a key by workers or others lawfully on a construction site, under the circumstances of this case, would place an unrealistic burden on contractors and other employers."[3] *Id.* at 184.

In *Speaker v. Cates Co.*, 879 S.W.2d 811 (Tenn. 1994), the plaintiffs, survivors of a decedent as in the present case, brought a wrongful death action against the apartment complex where the decedent had lived and the security company with which the apartment complex contracted for certain services. The decedent had been a resident of the apartments for several years, and had asked the resident manager to change the lock on his front door because his ex-roommate had written him a bad check. *Id.* at 814. The lock was changed that same day. *Id.* A few days later, the former roommate and his companion contacted the decedent and arranged to come by the apartment to obtain his personal belongings. *Id.* Once the former roommate and his companion arrived at the apartment that evening, either one or both of them murdered the decedent. *Id.* The trial court and the Court of Appeals found that the plaintiffs failed to present sufficient evidence to establish notice

---

[3]    The Court also quoted Prosser and Keeton for the following relevant passage:

> On its face, the problem is one of whether the defendant is to be held liable for an injury to which the defendant has in fact made a substantial contribution, when it is brought about by a later cause of independent origin, for which the defendant is not responsible. In its essence, however, it becomes again a question of the extent of the defendant's original obligation; and once more the problem is not primarily one of causation at all, since it does not arise until cause in fact is established. It is rather one of the policy as to imposing legal responsibility.

*Doe*, 845 S.W.2d at 184 (citing PROSSER AND KEETON ON THE LAW OF TORTS, § 44, p. 301 (5th ed. 1984)).

of impending harm to a tenant, and the Supreme Court agreed, stating:

> With regard to notice of prior criminal acts on the premises, the plaintiffs offered the affidavit of a Memphis police officer verifying that there had been at least 25 criminal incidents at [the apartment complex] in the six months preceding the date of [the decedent's] murder. Again, even if the defendants had knowledge of those criminal acts, such does not constitute "notice of an unreasonable risk or likelihood of danger [to the decedent] caused by a condition within [the defendants'] control ." . . . Consequently, [the defendants] had no duty to protect [the decedent] from the criminal acts of [the former roommate and his companion], which were an independent intervening cause of [the decedent's] injuries. See *Doe v. Linder Contr. Co.*, 845 S.W.2d at 182. The evidence is not sufficient to support a cause of action for negligence against [the defendants].

*Id.* at 815.

"The Tennessee Supreme Court has in recent years consistently and repeatedly held that the proper analytical framework for determining the existence or non-existence of duty is a balancing approach based on principles of fairness and justice." *Biscan v. Brown*, No. M2001-02766-COA-R3-CV, 2003 Tenn. App. LEXIS 875, at *55 (Tenn. Ct. App. Dec. 15, 2003). In *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891 (Tenn. 1996), our Supreme Court again discussed the issue of duty in the context of criminal acts by third parties. The Court held that while businesses are not insurers of their customers' safety, they do have a duty to take reasonable steps to protect their customers from foreseeable criminal acts by third parties. *Id.* at 902. The Court overruled *Cornpropst v. Sloan*, 528 S.W.2d 188, 197 (Tenn. 1975), insofar as the decision held that "conditions in the area [of the defendant business] are irrelevant" in assessing the foreseeability of a criminal act. *McClung*, 937 S.W.2d at 899. The *McClung* Court also found that "foreseeability of harm on which liability may be imposed is not limited to criminal acts of third parties that are known or should be known to pose an imminent probability of harm to customers" and that "[c]onditions other than those which pose an imminent threat to persons on the premises are relevant to the foreseeability of harm." *Id*. The Court went on to join those courts that generally imposed a duty upon businesses to take reasonable measures to protect their customers from foreseeable criminal acts. *Id*. In defining "foreseeability," the Court found that neither a "prior incidents rule" nor a "totality of the circumstances approach" provided "a suitable balance between the burden of the duty to be imposed and the nature of the rights to be protected[.]" *Id.* at 899-901. The Court examined its recent opinions addressing the existence or nonexistence of a duty in negligence cases and concluded that each inquiry generally demonstrated a balancing approach consistent with principles of fairness. *Id.* at 901 (citing *Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896 (Tenn. 1996); *Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994); *Pittman v. Upjohn Co.*, 890 S.W.2d 425 (Tenn. 1994); *Haynes v. Hamilton County*, 883 S.W.2d 606 (Tenn. 1994); *Speaker v. Cates Co.*, 879 S.W.2d 811 (Tenn. 1994); *Bradshaw v. Daniel*, 854 S.W.2d 865 (Tenn. 1993); *Doe v.*

*Linder Constr. Co.*, 845 S.W.2d 173 (Tenn. 1992); *Hames v. State*, 808 S.W.2d 41 (Tenn. 1991); *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn. 1991)).  The Court then held as follows:

> After careful consideration of the jurisprudence of other jurisdictions and our own, we  adopt the following principles to be used in determining the duty of care owed by the owners and occupiers of business premises to customers to protect them against the criminal acts of third parties: A business ordinarily has no duty to protect customers from the criminal acts of third parties which occur on its premises. The business is not to be regarded as the insurer of the safety of its customers, and it has no absolute duty to implement security measures for the protection of its customers.  However, a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.

> In determining the duty that exists, the foreseeability of harm and the gravity of harm must be balanced against the commensurate burden imposed on the business to protect against that harm.  In cases in which there is a high degree of foreseeability of harm and the probable harm is great, the burden imposed upon defendant may be substantial. Alternatively, in cases in which a lesser degree of foreseeability is present or the potential harm is slight, less onerous burdens may be imposed. By way of illustration, using surveillance cameras, posting signs, installing improved lighting or fencing, or removing or trimming shrubbery might, in some instances, be cost effective and yet greatly reduce the risk to customers. *See Seibert v. Vic Regnier Builders, Inc.*, 856 P.2d at 1339-40. In short, "the degree of foreseeability needed to establish a duty decreases in proportion to the magnitude of the foreseeable harm" and the burden upon defendant to engage in alternative conduct. *Pittman v. UpJohn Co.*, 890 S.W.2d at 433 (Tenn. 1994). "As the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less to generate a duty of precaution." PROSSER & KEETON ON THE LAW OF TORTS at 171. The degree of foreseeability needed to establish a duty of reasonable care is, therefore, determined by considering both the magnitude of the burden to defendant in complying with the duty and magnitude of the foreseeable harm.

> As a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will

almost always require that prior instances of crime have occurred on or in the immediate vicinity of defendant's premises. Courts must consider the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship to the crime giving rise to the case of action. To hold otherwise would impose an undue burden upon merchants.

*McClung*, 937 S.W.2d at 901-02. In *Turner v. Jordan*, 957 S.W.2d 815, 818 n. 3 (Tenn. 1997), the Tennessee Supreme Court cited the *McClung* decision for its discussion of duty and foreseeability, and the Court observed that "the analysis of duty and proximate cause is similar. . . [W]hile duty and proximate cause are separate components of a negligence claim, the analysis for each may require consideration of foreseeability principles and public policy matters."

In this case, after a thorough review of the record and the arguments submitted by the parties, we are unable to find any genuine issue as to any material fact in this case that would support a finding that such an isolated violent outburst by Mr. Miller was sufficient to notify MHA that criminal acts against its tenants were reasonably foreseeable, either generally or at some particular time. Appellants failed to demonstrate that MHA's knowledge of Mr. Miller's previous altercation with another MHA tenant in 1998, or his criminal charges from the 1970's, were sufficient to give rise to a duty upon MHA to act to prevent the death of decedent, Mr. Brown, in 2002. The degree of notice imputed to the defendants in the *Tedder* and *Speaker* decisions was more specific than that asserted by Appellants in the case at bar, yet in those cases, the defendants were absolved from tort liability based upon a lack of a duty to act or for a wanting of proximate cause.

Furthermore, even assuming that the 1998 incident in which L.C. Miller attempted to stab another tenant was sufficient to impose a duty upon MHA to take actions to prevent foreseeable harm to other tenants by Mr. Miller, we find that the actions advocated by Appellants exceed the scope of MHA's duty of care as landlord and owner of the apartment complex. The scope of that duty depends on all relevant circumstances, including foreseeability of harm to the plaintiff and other similarly situated persons. *Heggs v. Wilson Inn Nashville-Elm Hill, Inc.*, No. M2003-00919-COA-R3-CV, 2005 Tenn. App. LEXIS 535, at *9 (Tenn. Ct. App. Aug. 25, 2005) (citing *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn. 1994)). Appellants have cited no authority, in this jurisdiction or elsewhere, for the proposition that landlords have an affirmative duty to evict or closely monitor a tenant who is known to have a criminal history, and numerous public policy considerations dissuade this Court from establishing such a precedent on the facts of this case. It is undisputed that MHA placed Mr. Miller on probation for one year after the attempted stabbing incident in 1998. Considering the tragically chaotic events that led to the death of Mr. Brown in 2002, and applying the balancing approach favored by our Supreme Court in *McClung*, we find that Appellants' position that MHA was under a legal duty to evict Miller or closely monitor his behavior clearly places an unrealistic burden on MHA. Therefore, we affirm the trial court's entry of summary judgment in favor of MHA on Appellants' claim for wrongful death through negligence.

Appellants' remaining claim against MHA is for breach of contract. On appeal, they briefly

submit that there remains a genuine issue of material fact concerning whether MHA breached its lease with the decedent. Apparently, Appellants' sole basis for this theory is language within the lease agreement providing that MHA will "maintain the dwelling unit and the development in decent, safe and sanitary condition."[4]

We believe that Appellants' arguments on this issue are similar to those considered and rejected by this Court in *Archer v. Burton Plaza Assoc., Ltd.*, No. 03A01-9511-CV-00417, 1996 Tenn. App. LEXIS 136 (Tenn. Ct. App. March 4, 1996). In that wrongful death case, the plaintiffs' decedent was murdered inside the laundry room of the apartment building where he lived. *Archer*, 1996 Tenn. App. LEXIS 136, at *1. Alleging claims of negligence and breach of contract, the plaintiffs sued the owners and operators of the apartment complex. *Id.* Addressing the contract issue first, we considered the lease provisions relied upon by the plaintiffs in that case, under which the landlord agreed to "maintain the common areas and facilities in a safe condition." *Id.* Applying well-established principles of contract interpretation, we found the intention of the parties to the contract to be clear, and stated:

> We are of the opinion that, in proper context, the terms "maintenance" and "maintain the common areas and facilities in a safe condition" are limited to maintaining the property so that the common areas and facilities are free from physical defects. We find that under the terms of the contract, the parties did not contemplate protection of the occupants from harm by third persons. Accordingly, we are of the opinion that the trial court was correct in sustaining the motion for summary judgment on the breach of contract issue.

*Id.* at *6.

The lease provision relied upon by Appellants in this case is virtually identical to the one before this Court in *Archer*. In fact, the provision relied upon by Appellants is even more focused upon physical characteristics of the property, considering its reference to a "decent" and "sanitary" condition. We similarly conclude that this language does not manifest an intention of the parties that MHA would broadly assume the protection of Mr. Brown from harm by third persons. Rather, this

---

[4] We recognize that in its November 28, 2005 memorandum, the trial court's discussion of the breach of contract claim dealt only with Appellant's claims based upon MHA's lease with L.C. Miller. Notwithstanding Appellants' apparent abandonment of this theory on appeal, we agree with the trial court's conclusion that Appellants lacked standing to assert liability of MHA based upon certain provisions of its lease with the shooter, Mr. Miller. The breach of contract claim now before us, based upon the provision of Mr. Brown's lease with MHA, was not specifically pled in either of Appellants' amended complaints. However, Appellants did include this argument in their motion in opposition to MHA's motion for summary judgment. The record does not indicate an express ruling on this issue, and Appellants have not included a transcript from the summary judgment hearing in the record before this Court. Because we are not at liberty to presume, even in the absence of an express ruling thereon, that the trial court overlooked a viable issue in the case, *Brookside Mills v. William Carter Co.*, No. 03A01-9403-CH-00111, 1994 Tenn. App. LEXIS 674, at *16-17 (Tenn. Ct. App. 1994), we will presume that the trial court considered and ruled upon this argument at the hearing below.

provision illustrates MHA's agreement to keep the apartment and premises free from physical defects. Therefore, it is our opinion that the trial court appropriately granted MHA summary judgment on Appellants' cause of action for breach of contract.

## IV. Conclusion

For the foregoing reasons, the trial court's entry of summary judgment in favor of MHA is affirmed. Costs are assessed against Appellants, Cheryl Brown Giggers, Charles C. Brown, Jr., Angela G. Brown, and Joann Fisher, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE