**Vicki Clanton SPEAKER and James Mark Clanton, as legal heirs of Felix Clanton, Jr., Plaintiffs–Appellants–Appellees,**

v.

**The CATES COMPANY, Security–Chek Systems, Inc., Robert F. Fogelman, Fogelmen Investments Co., Defendants–Appellees–Appellants.**

Supreme Court of Tennessee,
at Jackson.

June 13, 1994.

Linda L. Holmes and S. Denise McCrary, Memphis, for plaintiffs.

W. Timothy Hayes, Jr. and John R. Cannon, Jr., Memphis, for defendants The Cates Co., Robert F. Fogelman and Fogelman Investments Co.

John Barry Burgess and Richard Glassman, Memphis, for defendant Security–Chek Systems, Inc.

## OPINION

REID, Chief Justice.

This case presents appeals by all parties from summary judgments for all defendants in an action for the wrongful death of Felix Clanton, Jr., who was murdered by his ex-roommate at the McKellar Woods Apartments. The suit is against the Cates Company ("Cates"), the manager of McKellar Woods Apartments; Security–Chek Systems, Inc. ("Security–Chek"), which had contracted with Cates to provide certain services at the apartment complex; and Robert F. Fogelman and Fogelman Investments Company ("Fogelman"), the owners of the complex. The trial court granted all the defendants' motions for summary judgment. The Court of Appeals affirmed summary judgments for all of the defendants on the negligence claims; it reversed summary judgment for Cates and Fogelman on the misrepresentation claim; and it reversed summary judgment for Security–Chek on the breach of contract claim.

The record supports the trial court's award of summary judgment for the defendants on all counts.

Unless the evidence, considered in the light most favorable to the plaintiffs, shows that there is no genuine issue as to any disputed, material fact, summary judgment for each defendant must be reversed. See Tenn.R.Civ.P. 56.03 (1992); Byrd v. Hall, 847 S.W.2d 208, 211 (Tenn.1993).

The record on which the trial court granted the defendants' motions for summary judgment included the complaint, depositions, affidavits and the transcript of the criminal case in which the decedent's ex-roommate was convicted of murder. The proof in support of the motions shows that in January, 1989, Cates entered into an agreement with Security–Chek for "a security service for the surveillance of property." The agreement provided that Security–Chek would provide certain specific services, including the following:

1. The Contractor shall furnish properly equipped officers to perform security services at the Client's facility.
2. The security officers assigned shall perform the following general duties:
   A. Submit written reports "daily" covering any unusual or hazardous conditions at the conclusion of each shift.
   B. Perform all other specific duties in accordance with written instructions as agreed upon between the Client and the Contractor.

The "other specific duties" referred to in the contract were set forth in the "post orders" for the apartment complex. These "post orders" essentially required the security officer to check vehicles for a valid McKellar Woods decal which was issued to each resident, maintain a daily activity report, and secure the clubhouse and pool area. Pursuant to that agreement, a "courtesy booth" located at the entrance to the apartment complex was manned between 5:00 p.m. and 5:00 a.m. by an employee of Security–Chek who checked vehicles entering the compound for the display of a decal. Security–Chek personnel would advise a resident by telephone before allowing a visitor to enter the compound, unless prior authorization had been given by the resident. However, Security–Chek personnel were required by the agreement to perform other duties which caused them to

be away from the courtesy booth for extended periods of time. Such duties included checking for improperly parked vehicles, inspecting outside lighting, and patrolling the pool and clubhouse area. Brochures issued by the management listed "controlled access" as a service provided to residents of the apartments.

The decedent, Clanton, had been for several years a resident of McKellar Woods Apartments, pursuant to a lease agreement with Cates. In March, 1989, Clanton took in Phillip Spight as a roommate. Shortly thereafter, Spight gave Clanton a check on a closed account, and as a result Spight moved from the apartment. On April 12, 1989, Clanton asked the resident manager of the apartments to change the lock on his front door because "his roommate had written him a bad check." Clanton did not give the manager the name of his ex-roommate or otherwise identify him, nor did he indicate that he was afraid of his ex-roommate. The lock was changed that same day.

Around 11:00 p.m. on April 15, 1989, Spight and his companion, Larz Wood, gained admission to Clanton's apartment. At his criminal trial, Spight testified that he talked to Clanton earlier in the evening and Clanton agreed that Spight could come by to get the remainder of his personal belongings. Spight and Wood testified that they had drunk alcohol and smoked crack cocaine before going to Clanton's apartment, they knocked on Clanton's door and, upon receiving no answer, Spight went to Clanton's bedroom window where he entered the apartment. Wood testified that Spight opened the front door and Clanton invited him into the apartment. Either Spight or Wood, or both, murdered Clanton in the apartment. Wood pled guilty to second degree murder; a jury convicted Spight of first degree murder.

The record does not indicate whether the vehicle driven by Spight on the night of the murder displayed a valid decal. The security officer's activity report for the night of the murder made no mention of any visitors to Clanton's apartment or any unusual occurrences in the apartment complex.

The complaint alleges that Cates and Fogelman were negligent in failing to provide "controlled access" as advertised in the brochure and in failing to provide security adequate to prevent Clanton's murder; and, further, that Security–Chek breached its contract with Cates, that Clanton was a third-party beneficiary of that contract, and that the plaintiffs are entitled to assert a claim based on breach of contract.

■ The actions against Cates and Fogelman assert that the defendants breached the duty of care owed by a landlord to a tenant. The law governing the liability of a landlord for the criminal acts of third parties was set forth by the Court of Appeals in *Tedder v. Raskin,* 728 S.W.2d 343 (Tenn.Ct. App.1987) and approved by this Court in *Doe v. Linder Constr. Co.,* 845 S.W.2d 173 (Tenn. 1992). In *Tedder,* the plaintiffs' son, who was asleep in their apartment, was struck by a stray bullet which had been fired in the adjoining apartment during an attempted robbery. The plaintiffs sued the owner and operator of the apartment complex alleging negligence, breach of contract, and misrepresentation. The trial court granted a directed verdict for the defendants, and the Court of Appeals affirmed. The Court of Appeals held that the standard for liability is "due care under all the circumstances." *Tedder,* 728 S.W.2d at 348 (quoting *Zang v. Leonard,* 643 S.W.2d 657, 663 (Tenn.Ct.App.1982)). The court further stated:

> As in other negligence actions, the plaintiff will have to prove that the landlord was on notice of an unreasonable risk or likelihood of danger to his tenants caused by a condition within his control. Once notice sufficient to cause a reasonably prudent person to foresee the probability of harm is received, the duty to act arises and the failure to take reasonable steps to correct the problem within a reasonable time is a breach of that duty.
>
> However, the plaintiff must further prove that the landlord's failure to act was the proximate cause of the injury. To meet this burden, the plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the land-

lord's power more probably than not would have prevented the injury.

*Id.* at 348–349.

■ In *Doe v. Linder Constr. Co.*, the purchaser of a residence in a planned development was raped by a person who had a contract with the builder to paper and paint other units under construction. The Court held that the rape was not foreseeable and the failure to prevent the theft of a pass key to the victim's residence was not the proximate cause of the plaintiff's injuries. The Court stated:

> If the injury was not reasonably foreseeable, then the criminal act of the third party would be a superseding, intervening cause of the harm, relieving the landlord of liability.

*Id.* at 178 (quoting *Tedder v. Raskin*, 728 S.W.2d at 349). The Court adopted the following standard of review from *Tedder*:

> If, as a matter of law, the plaintiff has failed to allege or prove facts sufficient to establish notice, the existence of the duty to act, breach of the duty, or proximate cause, dismissal, summary judgment, or a directed verdict would be appropriate.

*Id.* at 183 (quoting *Tedder v. Raskin*, 728 S.W.2d at 349).

■ In the present case, Cates and Fogelman assert that the trial court and Court of Appeals properly found that the plaintiffs failed to present sufficient evidence to establish notice of impending harm to a tenant as required under *Tedder*. The plaintiffs respond that the requisite notice was established by two pieces of information. First, they argue that the request by Clanton to have the lock on his front door changed constituted notice. Second, they contend that the defendants knew that criminal acts had occurred on the premises previously. This evidence is not sufficient.

In *Tedder*, the plaintiffs complained to the apartment manager about parking problems caused by the large number of people visiting the apartment next door. The plaintiffs also told the manager that they suspected their neighbor was a drug dealer and that if he did not stop that activity, "somebody is going to start shooting." *Tedder v. Raskin*, 728 S.W.2d at 346. A few days later, a bullet came through the wall and injured the plaintiffs' sleeping son. The court held that the notice was insufficient, as a matter of law, to impose a duty on the landlord to act. *Id.* at 350. The court further held that assuming *arguendo* that the defendant had legally sufficient notice, the injury to the plaintiff was not a reasonably foreseeable and probable result of the landlord's negligence. *Id.*

The notice given in *Tedder* was much more specific than in the present case. When Clanton asked the resident manager to change the lock on his front door, the only reason stated was that his roommate had given him a bad check. That request was legally insufficient to cause a reasonably prudent person to foresee the probability of harm; therefore, the defendant was under no duty to protect Clanton from the harm which eventually befell him. With regard to notice of prior criminal acts on the premises, the plaintiffs offered the affidavit of a Memphis police officer verifying that there had been at least 25 criminal incidents at McKellar Woods Apartments in the six months preceding the date of Clanton's murder. Again, even if the defendants had knowledge of those criminal acts, such does not constitute "notice of an unreasonable risk or likelihood of danger [to Clanton] caused by a condition within [the defendants'] control." *See id.* at 348. Consequently, Cates and Fogelman had no duty to protect Clanton from the criminal acts of Spight and Wood, which were an independent intervening cause of Clanton's injuries. *See Doe v. Linder Constr. Co.*, 845 S.W.2d at 182. The evidence is not sufficient to support a cause of action for negligence against Cates and Fogelman.

■ Cates and Fogelman appeal the Court of Appeals' denial of summary judgment on the claim of misrepresentation. The plaintiffs contend that the defendants' misrepresented the security at the apartment complex.[1] The plaintiffs offered as evidence

---

1. The defendants correctly point out that neither misrepresentation nor breach of contract was raised in the Court of Appeals. However, since

a brochure advertising the complex as having a "courtesy booth with controlled access." To prevail on a claim of misrepresentation, the plaintiff must show that the defendant knowingly or recklessly made a false representation as to a material fact which was justifiably relied upon by the plaintiff, and that damages were suffered by the plaintiff as a result of the reliance. *Pusser v. Gordon*, 684 S.W.2d 639, 641 (Tenn.Ct.App.1984). An advertisement of "controlled access" does not constitute a "representation" by the owner of an apartment that it will assure the tenant absolute safety. Furthermore, there is no evidence in the record that the brochure was published prior to the time Clanton became a tenant, that he ever saw the brochure, or that he relied upon it in any way. Consequently, the record does not support a claim based on misrepresentation and summary judgment for the defendants is appropriate.

■ The plaintiffs seek recovery against Security–Chek based on negligence and breach of contract. With regard to negligence, the duty of one engaged by a landlord to carry out the landlord's duty of care owed tenants is no greater than that of the landlord itself unless a greater duty is assumed. *See* Restatement (Second) of Torts § 324A cmt. d (1977). As stated above, the duty to protect a tenant from the criminal act of a third party arises only when the landlord has notice of an unreasonable risk of harm to the tenant caused by a condition within the landlord's control. Therefore, unless Security–Chek had notice of a threat of harm against Clanton, it would have no duty to protect him from that harm. There is no proof in the record that Security–Chek had such notice. Apparently, the Security–Chek personnel were not even aware that Clanton had changed the lock on his door. Without reasonable notice of imminent harm, there can be no cause of action against Security–Chek for negligence.

■ In discussing the rights of third party beneficiaries, the court stated in *Willard v. Claborn*, 220 Tenn. 501, 419 S.W.2d the Court of Appeals addressed these issues, a

168 (1967), that there are essentially three types of third party beneficiaries:

First, where the performance of the promise will constitute a gift to the beneficiary; the beneficiary is a donee beneficiary. Second, if no purpose to make a gift appears from the terms of the contract and the performance of it will satisfy an actual or supposed asserted duty of the promisee to the beneficiary; the beneficiary is a creditor beneficiary. Third, in all other cases the beneficiary is deemed to be an incidental beneficiary. *See* Restatement of Contracts, Sec. 133.

*Id.*, 419 S.W.2d at 170. The record shows that pursuant to the contract with the owners, Security–Chek was obligated to "perform security services" at the apartment complex. As set forth in the "post orders," Security–Chek's duties included: checking vehicles for a valid McKellar Woods decal, calling residents for authorization prior to allowing visitors to enter, maintaining a log of unusual occurrences, and patrolling the common areas. It appears that the contract was entered into primarily to protect the apartment property for the benefit of the owners. At most, the decedent was an incidental beneficiary of the contract. In any event, there is no showing that Security–Chek failed to perform as required by those provisions which would inure to the benefit of the tenants. The record is silent regarding whether the vehicle by which Spight entered the complex had a valid McKellar Woods decal. In fact, there is no proof regarding how Spight and Wood entered the complex. Consequently, there is no evidence in the record that Security–Chek breached any provision of the agreement. Since the plaintiffs failed to show that there was a breach of the contract, there need be no discussion of the duty owed by Security–Chek to the tenants or the issue of proximate cause.

Accordingly, the decision of the Court of Appeals regarding breach of contract by Security–Chek is reversed, and the judgment of the trial court granting summary judgment is affirmed. The decision of the Court of Appeals regarding misrepresentation by Cates and Fogelman is reversed, and the summary discussion is warranted.

judgment of the trial court is affirmed. The decision of the Court of Appeals affirming the trial court's summary judgment on the negligence claims is affirmed. The result is that the judgment of the trial court granting summary judgment for all of the defendants on all of the counts is affirmed.

Costs are taxed to the plaintiffs.

DROWOTA, O'BRIEN, and ANDERSON, JJ., concur.

DAUGHTREY, J., not participating.