IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

May 21, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | |
|---|---|
| ALBERT C. HARJES, III, and wife, MARY DENISE HARJES, | ) C/A NO. 03A01-9810-CH-00321 |
| | ) |
| Plaintiffs-Appellees, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| | ) HAMILTON COUNTY CHANCERY COURT |
| JEWELL I. RUSSELL, | ) |
| | ) |
| Defendant-Appellant, | ) |
| | ) |
| and | ) |
| | ) |
| | ) |
| DONNA RUSSELL, | ) |
| | ) HONORABLE HOWELL N. PEOPLES, |
| Defendant. | ) CHANCELLOR |


For Appellant                          For Appellees

JEWELL I. RUSSELL                      JAMES W. CLEMENTS, III
Pro Se                                 Kennedy, Fulton, Koontz &
Woodbury, Tennessee                       Farinash
                                       Chattanooga, Tennessee


O P I N I O N


AFFIRMED AND REMANDED                              Susano, J.

1

Plaintiffs Albert C. Harjes, III, and his wife, Mary Denise Harjes, filed this action against Jewell I. Russell[1] and her daughter, Donna Russell, seeking damages for the Russells' alleged misrepresentations in connection with the sale of the Russells'[2] residence to the plaintiffs. Following a bench trial, the court found that Jewell I. Russell ("Russell")[3] had made a misrepresentation regarding the existence of water problems on the subject property. Accordingly, the trial court awarded the plaintiffs damages of $2,950, which amount represents the cost of repairs to the property.[4] Russell appealed, raising several issues for our consideration:

> 1. Did Russell have a reasonable belief that a previously-existing water problem had been resolved two years earlier?
>
> 2. Did the trial court err in finding that a water problem existed at the time of the sale of the home?
>
> 3. Did the trial court err in finding that a septic system problem, created by Russell's efforts to correct the alleged water problem, existed at the time of the sale of the home?
>
> 4. Did the trial court err in finding that Russell misrepresented the condition of the property to the plaintiffs?
>
> 5. Was this action barred by the statute of limitations set forth at T.C.A. § 66-5-208?

---

[1] Mrs. Russell is a widow.

[2] The respective interests of Mrs. Russell and her daughter in the property are not reflected in the record.

[3] For ease of reference, we will refer to the defendant Jewell Russell as "Russell," and to her daughter as "Donna Russell."

[4] The trial court dismissed the claim against Donna Russell. It also dismissed the Russells' third party complaint against the builder of the subject house, David Freeman. Finally, the trial court denied the plaintiffs any further damages for additional repairs or for their alleged mental anguish. None of these determinations are at issue on this appeal.

I

In February, 1996, the plaintiffs contracted with the Russells to purchase the latter's home in Ooltewah, Tennessee. The plaintiffs had visited the house on at least two occasions prior to entering into the contract. On one of these visits, Mr. Harjes noticed straw in the back yard. Russell told him that she had placed the straw there after installing downspouts to help with water drainage. According to Mr. Harjes, he then asked Russell whether she had experienced any water problems, and she responded in the negative. Furthermore, the Residential Property Condition Disclosure statement signed by the Russells prior to the sale indicates that the septic system was in operating condition and free of any significant defects or malfunctions.

The record indicates, however, that Russell had in fact experienced various water-related problems on the property prior to the sale. Following heavy rain and flooding in April, 1994, she had written a letter to the Tennessee Real Estate Commission, in which she stated as follows:

> ...raw sewage is draining from my septic tank into the drainage ditch between my lot and lot 264. This raw sewage is coming from my septic tank because it was not installed properly. Raw sewage is also draining into a ditch about 20 feet from my property line in the back....
>
> *    *    *
>
> My yard has completely washed away, my septic tank was not installed properly... water stands under my home at the foundation all the time....

The property subsequently was inspected by Richard Henderson of the Hamilton County Health Department. At that time, Henderson observed raw sewage coming out into the drainage ditch; he recommended the installation of a "curtain" drain to alleviate the problem. However, Russell apparently chose to pursue other methods of improving the water drainage. She installed several corrugated drainage pipes in the yard and added topsoil and sod to the yard.

In July, 1994, Henderson returned to the Russells' residence in response to a complaint from a neighbor, but he did not observe any sewage on that occasion. Another complaint apparently was made in March, 1995; at that time, a second Health Department employee inspected the ditch, but reported finding no sewage therein.

As noted earlier, Russell had also placed straw in the back yard after installing downspouts to help disperse water away from the house. Approximately two to three weeks after moving into the home, the plaintiffs noticed a muddy spot where the straw had been placed in the yard. They discovered that water was bubbling up from this area whenever the toilets were flushed. The plaintiffs subsequently contacted the parties' respective real estate agents, but nothing was done to alleviate the problem. Finally, on May 7, 1996 -- after the plaintiffs had moved into the house -- Henderson responded to a request by Mrs. Harjes for a consultation. Upon inspection of the property, he again observed sewage coming out into the drainage ditch. At trial, Henderson testified that excessive water in the yard could

4

affect the septic system, and that if sewage is emanating from drainage pipes, he would suspect that it was leaking into the drainage system from the sewer lines. He also testified that efforts to alleviate water problems, such as placing topsoil over the yard and installing drainage pipes close to the sewer lines, could contribute to the sewage problems.

Although the problem abated during the drier summer months, it reappeared in September or October. According to Mr. Harjes, the problem became more severe at that time, and he observed sewage flowing out of three drainage pipes into the ditch. Mrs. Harjes testified that the problem continued to get worse, and that she began to experience various problems with her washing machine, sink, toilet and dishwasher. In February, 1997, Mrs. Harjes noticed what she believed to be washing powder and toilet paper in the drainage ditch.

The plaintiffs' next-door neighbors, James and Terri Hoff, also testified at trial. Mr. Hoff testified that he had smelled sewage and observed water, soap suds and toilet paper in the ditch while the Russells lived there. Mrs. Hoff testified that she had not seen any sewage in the ditch prior to the plaintiffs' arrival. However, she testified that, while the Russells were still living there, Donna Russell had told her that there was sewage in the ditch.

The plaintiffs ultimately had the septic system repaired in August, 1997, at a cost of $2,950. They filed this lawsuit shortly thereafter.

II

In this non-jury case, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the preponderance of the evidence is otherwise.  Rule 13(d), T.R.A.P.; *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  The trial court's conclusions of law, however, are afforded no such presumption. *Campbell v. Florida Steel*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

We also note that the trial court is in the best position to assess the credibility of the witnesses; therefore, such determinations are entitled to great weight on appeal. *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn.App. 1995); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn.App. 1991).  In fact, we have previously noted that

> ...on an issue which hinges on witness
> credibility, [the trial court] will not be
> reversed unless, other than the oral
> testimony of the witnesses, there is found in
> the record clear, concrete and convincing
> evidence to the contrary.

*Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn.App. 1974).

With regard to misrepresentation claims, the Supreme Court has held that

> [t]o prevail on a claim of misrepresentation,
> the plaintiff must show that the defendant
> knowingly or recklessly made a false
> representation as to a material fact which
> was justifiably relied upon by the plaintiff,
> and that damages were suffered by the
> plaintiff as a result of the reliance.

*Speaker v. Cates Co.*, 879 S.W.2d 811, 816 (Tenn. 1994).

III

Following a bench trial, the trial court found that the property did in fact have water problems, which Russell had sought to cover up with straw; that Russell had misrepresented the facts with regard to the existence of water problems; that the misrepresentation was false when made; that the misrepresentation pertained to a material fact, in light of the parties' testimony to that effect, as well as the fact that Mr. Harjes had specifically inquired whether Russell had experienced any water problems; that the plaintiffs had not had an opportunity to discover the problem when inspecting the house and had thus reasonably relied upon Russell's assurances; and finally, that the plaintiffs had been damaged by the misrepresentation, in that they were forced to pay for repairs to alleviate the problem.

Upon review of the record, we are of the opinion that the evidence does not preponderate against the trial court's findings. The record contains evidence that Russell had experienced extensive water problems on the property, and that she was aware that her septic system was not properly installed.

8

The record also indicates that she took various steps to attempt to alleviate the water problems, including the addition of topsoil and the installation of various drains and pipes in the yard. The testimony of Henderson and Mr. and Mrs. Hoff, which was accredited by the trial court, indicates that sewage was present in the drainage ditch prior to the sale of the Russells' residence. It is also clear that Russell was experiencing some degree of water problems at the time of the sale of the property, as evidenced by the fact that she had installed downspouts and placed straw in the yard.

We do not find that the evidence preponderates against the trial court's finding that these water problems, and Russell's efforts to correct them, caused or contributed to the sewage problems at the residence. By the same token, it is clear that Russell specifically told Mr. Harjes, in response to his inquiry, that she did not have any water problems on the property. The plaintiffs testified, however, that they began experiencing various problems within two or three weeks of moving into the home. Under these circumstances, we cannot agree with Russell's assertions that she had a reasonable belief that the septic system was functioning properly and that water problems on the property did not cause the failure of the septic system. Accordingly, we hold that the trial court was not in error in determining that a misrepresentation occurred and that the plaintiffs were entitled to damages as a result. *See **Speaker***, 879 S.W.2d at 816.

9

Our decision is buttressed by the fact that the trial court was in the best position to assess the credibility of the witnesses.  *Massengale*, 915 S.W.2d at 819; *Bowman*, 836 S.W.2d at 566.  Clearly, the outcome of this case depended on the resolution of issues that hinged on the credibility of the witnesses.  The trial judge obviously accredited the testimony favorable to the plaintiffs' theory of the case.  Having found no "clear, concrete and convincing evidence to the contrary," we are in no position to reverse the decision of the lower court.  *Tennessee Valley Kaolin Corp.*, 526 S.W.2d at 490.

IV

Russell also advances other theories on this appeal.  She contends that the plaintiffs' cause of action is barred by the one-year statute of limitations set forth at T.C.A. § 66-5-208 (Supp. 1998).  That section, which is part of the Residential Property Disclosures Act, T.C.A. § 66-5-201, *et seq.* (Supp. 1998), provides in pertinent part that

> [a]ny action brought under this subsection
> shall be commenced within one (1) year from
> the date the purchaser received the
> disclosure statement or the date of closing
> (or occupancy if a lease situation),
> whichever occurs first....

T.C.A. § 66-5-208(a)(1) (Supp. 1998).

However, regardless of whether this action was filed within the above limitations period, we agree with the plaintiffs' assertion that the applicable statute of limitations

10

is instead found at T.C.A. § 28-3-105(1) (Supp. 1998). That section provides, among other things, that actions for injuries to real property shall be commenced within three years of the accrual of the cause of action. We also agree with the plaintiffs' assertion that, although the disclosure statement was relied upon as evidence of Russell's misrepresentations, the applicable portion of their complaint was based upon common law fraud and misrepresentation. We have previously held that where the gravamen of the complaint is a claim for damages to real property -- as is the case here -- the three-year limitations period set forth in T.C.A. § 28-3-105(1) controls. **Prescott v. Adams**, 627 S.W.2d 134, 137 (Tenn.App. 1981); *see also* **Swauger v. Haury & Smith Contractors**, 512 S.W.2d 261, 262-63 (Tenn. 1974). In the instant case, it is clear that the complaint was filed well within the applicable limitations period. *See* T.C.A. § 28-3-105(1). Accordingly, we find this issue to be without merit.

Finally, Russell asserts in the argument section of her brief that the plaintiffs "did not come to court with 'clean hands.'" The record, however, contains no support whatsoever for this theory, and it is therefore found to be without merit.

V

The decision of the trial court is affirmed. Costs on appeal are taxed to the appellant. This case is remanded to the

11

trial court for enforcement of the judgment and the collection of costs assessed there, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Houston M. Goddard, P.J.

_____
William H. Inman, Sr.J.